# DECLARATION OF ELSA DEL CARMEN JOYA REYES

I, Elsa del Carmen Joya Reyes, hereby declare as follows:

1. I am over eighteen years of age and competent to make this declaration. I have personal knowledge of the facts stated below, and if called as a witness, I could and would testify to them.
2. I submit this declaration to describe the conditions I experienced at Miramar Sub Office in Miramar, Florida, for ten days, from approximately June 23 to July 3, 2026.
3. On June 23, 2026, I attended my annual immigration supervision appointment at the Miramar Sub Office, which I have attended for the past 14 years. I arrived around 9:00 a.m. with all the required documentation. An official took my driver's license and Order of Supervision.
4. I was then told to wait outside until called. I waited outside in the summer heat for approximately four hours. Once called, I was escorted down a path to the entrance of the Miramar facility that was surrounded by military personnel. I was intimidated by the military personnel because I had never seen military personnel at previous appointments and they were lined up on each side along the path to the entrance to Miramar.
5. I was then told that my Order of Supervision was being revoked. I was not taken before an immigration judge.
6. Once inside the facility, the officials demanded all my personal belongings. They took my fingerprints and a DNA sample. I was then led to the cell where I was to be held during my time at Miramar.
7. I was held there for 10 days—I believe from June 23, 2026 to July 3, 2026.

8. After I was placed in the cell, an officer gave me one bottle of water. The officer told me that it was the only bottle I would receive and that I should keep it and refill it from the sink next to the toilet. I did not want to drink from that sink because of its proximity to the toilet and because women used the sink to wash their underwear. Women did this because they received only one sanitary pad per day while menstruating.

9. On my first day, I repeatedly asked to make a phone call so that I could communicate with my family. The officers completely ignored me. Whenever I saw an agent, I asked for a phone call. I may have asked up to 50 times. They ignored me. I continued asking every day but was either ignored or denied.

10. I was not allowed to make a call until the third day. An officer set the call to three minutes and the call ended when the three minutes expired. The phone was located at the officer's desk. Officers stayed at their desk while I made my call and there were military personnel nearby. Both officers and military personnel were close enough to listen and monitor our calls. Other women who were also there to make a phone call and they could also hear my phone call.

11. Around my third or fourth day at Miramar, my husband hired an attorney. There was no way for the attorney call me, and I did not have any way to write down the attorney's number in order for me to call her myself.

12. Calls became even more limited as more women arrived. Some days I was not able to make a call at all. One day I was only permitted to call at 3:00 a.m., which I considered inappropriate.

13. The cell where I was held was tiny. It had a small window and a door that always remained shut. There were no mats, cots, or anywhere to sleep. I had to lie on the ground to rest. At

one point 29 women were confined in the cell, and there was not even enough room to sit on the ground. For about 5 days, there were more than 20 women in the cell. I often stood because there was not enough room for everyone to sit. There were no chairs. Some women used blankets to lay down near the toilet, but I could not do this because it was unhygienic. The overhead lights remained on twenty-four hours a day. Because of the brightness, noise, and overcrowding, I could sleep only for short periods when I was overly tired.

14. In my room, there was a bare toilet with a small sink in the corner of the room. The toilet was exposed to everyone so everyone could see when someone was using the toilet. There was no privacy near the toilet area and there was a camera positioned directly in front of it and another camera located at the opposite angle. This exposure made it difficult for me to use the toilet to relieve myself.

15. The food provided at this facility was horrible. It was pre-packaged and heated in a microwave. It looked like expired food from a dollar store and tasted like plastic. The meals had expiration dates from 2025, 2024 and even as early as 2020. One day we were given food at 1:00 p.m. and nothing more until the following day. When we asked for food, an officer told us there was none left. When I tried eating the food, I felt severe stomach discomfort and experienced uncontrollable diarrhea. I requested medication or medical attention from guards multiple times, but I was ignored. I stopped eating because of this reaction to the food.

16. On my seventh day at Miramar, the air conditioning stopped working and remained broken for the rest of my detention. The heat was unbearable. The cell was so crowded and we were all sweating. One woman fainted because of the heat and had to be taken to the hospital. She was later returned to Miramar. Officers placed a fan outside the cell, but

because they kept the cell door closed, the fan provided no ventilation. They occasionally opened the door briefly and then shut it again.

17. On my first day, I requested medical attention because of the effects of waiting outside for approximately four hours in the extreme heat. I was told that I first needed to be processed. Later, I developed severe headaches from the continuous lighting in the cell. After I was processed, I repeatedly requested medication or medical attention for my headaches. I was told that only people who already had prescribed medications could receive medication.

18. On the sixth day, I suffered from shortness of breath, dizziness, severe chest pain, and became increasingly weak. I lost consciousness. Other women had to bang loudly on the door for help. I was taken out of the cell and allowed to sit on a bench in front of the cubicles for about five minutes. The officers told me that I just needed to breathe. No one checked my blood pressure, temperature or other vital signs; they simply let me sit, and then brought me back to the room. Like many other women there, I suffered from dehydration, malnutrition, and lack of hygiene.

19. The officers and military personnel sometimes mocked us. When we protested about the food, they mocked us saying "What do you want? A pizza?" On the tenth day I was at the facility, I asked if I could bathe since I had not bathed since I arrived. An officer responded, "This isn't a hotel." I was granted a three-minute shower, but I was not given any shampoo or soap, and I remained handcuffed the entire time. I remained in the same clothes that I had on when I arrived for the ten days I was detained at Miramar.

20. On the tenth day, an official called my name out. He asked me if I would sign my voluntary departure or deportation. I refused. The official said that I would have to be there longer and mockingly said "Good luck".

21. I was transferred from this facility on the tenth day to Broward Transitional Center in Pompano, Florida. I was weighed and discovered that I lost ten pounds at Miramar.

22. I suffered terribly at Miramar, and the experience continues to affect me psychologically. It is difficult for me to talk about or remember my time there because doing so makes me feel as though I am reliving what happened. I am now afraid to leave my home and feel depressed. I feel that I was tortured and traumatized by my experience at Miramar.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Because I do not speak English fluently, Lois Gutierrez read this declaration to me in Spanish over the telephone on October 1, 2026, including the statement concerning penalties of perjury. Spanish is a language I fully understand. I had the opportunity to ask questions and make corrections. I understood the declaration as translated and confirmed that its contents are true and correct.

Date: 10/01/2026

/s
**Elsa Del Carmen Joya Reyes**

**CERTIFICATION**

I, Lois Gutierrez, declare that I am proficient in the English and Spanish languages. On October 1, 2026, I read the foregoing declaration and translated it faithfully and accurately into Spanish over a telephone call with the declarant.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 1, 2026.

/s/ *Lois Gutierrez*
**Lois Gutierrez**