**DECLARATION OF ALVARO GUILLEMOT**

I, Alvaro Guillemot, declare as follows:

1. I am over eighteen years of age and competent to make this declaration. I have personal knowledge of the facts stated in it, and if called as a witness, I could and would testify to them.

2. I was detained at Miramar for four days and three nights.

3. I entered the United States legally in 2023, on an Italian passport. I have Italian and Argentine citizenship.

4. In 2025, I applied for a T visa. I received receipt notices for that application, and it remains pending.

**Arrest**

5. On April 27, 2026, I was working at a beach in the Miami area, supervising jet ski rentals. Two young women who had rented a jet ski were in an accident, and one of them badly injured her leg. I pulled her out of the water, sat her in a chair in the shade, gave her ice water, called an ambulance, and tried to keep her calm until the ambulance arrived and took her away.

6. After the ambulance left, ICE officers arrived. Their uniforms said "ICE" on the back, but I did not notice that at the time. I thought they were police officers. I spoke with them and explained what had happened.

7. The officers asked me for identification, and I gave them my Argentine driver's license. They made some phone calls. Another officer then came and shackled me. The officers told me, "Your time is up." The handcuffs were extremely tight. I was wearing only a bathing suit and a sleeveless shirt, and I was barefoot.

8. The officers took me to the ICE facility in Miramar, Florida ("Miramar"). I was held there from April 27 to April 30, 2026—four days and three nights.

**Overcrowding and Sleeping Conditions**

9. The room where I was held was about the size of two pickup trucks parked side by side. There were about 25 people in the room, sometimes more, and never fewer than 20. There were two toilets in that space. One toilet was broken.

10. There were no beds. Some people slept on a cement bench, and the rest of us slept on the concrete floor. I was barely able to sleep. I was very afraid.

11. I saw two other rooms at Miramar. Sometimes officers combined us into one room, with about 50 people in it. With that many people, there was not enough room for everyone to sit.

12. It was very cold, and I was cold the entire time. Officers would not give us anything to keep warm. On my second night, I was given a thin aluminum blanket, which provided no warmth.

13. Other than being taken out one at a time to make phone calls, we could not leave the room. We were allowed a maximum of two calls per day, for five minutes each. It was always at random times, when the guards wanted, and sometimes late at night.

**The Toilets, Hygiene, and Smell**

14. There were two toilets in the room, but one was broken. In front of the toilets there was a privacy wall that came up only to about waist height. Everyone could see and hear when someone had to use the toilet to defecate. It was extremely uncomfortable, inhuman, and disgusting. I was unable to have bowel movements with over 20 people so near me.

15. There was nowhere to wash. I was not allowed to shower even once. I asked the guards to let me wash, and they refused. No one in the room was allowed to wash. The room reeked of the toilet and of body odor.

16. On my second or third day, officers gave me a toothbrush and a tiny tube of toothpaste that was enough for only one or two uses.

**Water and Food**

17. Officers gave me one small 200 mL bottle of water per day. When I asked for more water, guards refused to give me more.

18. Officers said that the water from the sink was filtered, but it was not. That water was yellowish, smelled bad, and tasted bad. Because the one bottle I received was not enough, I had no choice but to drink it.

19. The food came in a small plastic container and was heated in a microwave. It was exactly the same each meal. I do not know what it was; it looked like vomit. I sometimes ate it when I was hungry enough.

20. I lost about six pounds during the days I was held at Miramar.

**Pressure to Sign Deportation Papers and Isolation**

21. Every day I was at Miramar, officers tried to get me to sign papers agreeing to voluntary departure from the United States. They told me that I could not stay in this country and that I would be detained for a long time. They told me that if I signed, I could leave in three days. They tried to make me afraid and treated me like a criminal.

22. Officers also threatened that I could be sent to a place where detainees were isolated and where there were alligators. I understood this as a threat meant to pressure me into signing.

23. I believe the guards were racist. They ignored us when we requested food, water, or bathing. When we complained about the shackles or the water, they did not care.

24. We were allowed a maximum of two calls per day, for five minutes each.

25. Everyone was afraid. Some people were so angry that they hit the walls, and others cried. It was a place of great suffering. Some people signed voluntary deportation quickly to get out. But even those people did not leave quickly. When guards told them that signing would result in a quick release, they lied.

26. After Miramar, I was transferred to other detention facilities several times. I was not able to inform my family members that I was being moved out of state. I am now detained in California. On August 24, 2026, an Immigration Judge dismissed my immigration case, but I remain in ICE custody. I don't know why I am detained.

27. My whole body hurt at Miramar—my stomach from the food, my body from lying on the ground, my head from the stress. And I felt terrible from being in such a cramped, filthy condition. At Miramar everything was pain and suffering. I believe I have trauma from this experience.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Because I do not speak English fluently, an attorney, Andrew Udelsman, read this declaration to me in Spanish over the telephone on September 24, 2026, including the statement concerning penalties of perjury. Spanish is a language I fully understand. I had the opportunity to ask questions and make corrections. I understood the declaration as translated and confirmed that its contents are true and correct.

I am currently detained in California City, California. Because of substantial delays in sending and receiving mail at this facility, I expressly authorized Mr. Udelsman to affix my /s/ electronic signature and file this declaration on my behalf. I gave this authorization after the entire declaration was read to me and I confirmed its accuracy, intending to adopt that signature as my own and to make this declaration under penalty of perjury. If required, I will provide a declaration bearing my handwritten signature.

Date: September 24, 2026

/s/ *Alvaro Guillemot*
**Alvaro Guillemot**

# CERTIFICATION

I, Andrew Udelsman, declare that I am proficient in the English and Spanish languages. On September 24, 2026, I read the foregoing declaration and translated it faithfully and accurately into Spanish over a telephone call with the declarant. After I completed translating the declaration, the declarant confirmed that the contents of the foregoing declaration are true and accurate, and authorized me to affix his /s/ signature.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 24, 2026.

/s/ *Andrew Udelsman*
**Andrew Udelsman**