**DECLARATION OF SANDRA ELENA VALERA PEREIRA**

I, Sandra Elena Valera Pereira, hereby declare as follows:

1. I am over eighteen years of age and competent to make this declaration. I have personal knowledge of the facts stated below, and if called as a witness, I could and would testify to them.
2. I am a citizen of Venezuela. I came to the United States approximately seven years ago and applied for asylum. My application for asylum is still pending. Apart from the arrest described below, I have never been arrested, and I have no criminal record.
3. On July 25, 2026, I was working as an Uber driver in Florida and had a passenger in my car. ICE Officers stopped me. They asked me for my driver's license. They did not tell me why they stopped me or why they were taking me into custody. They told me only that they were taking me to Miramar for a "check-in." They stated I would receive an ankle monitor, that I would be released after two hours, and that my daughter would be able to pick me up.
4. I showed the officers my valid driver's license and work authorization, which were valid until 2029. Despite seeing those documents, they took me into custody.
5. I was taken to the Miramar ICE Processing Center. When I arrived, no one told me why I was being held or what would happen to me. The only thing I was told was that I would be there for a few hours. They seated me near cubicles; at that time, I did not know that others were being held there. When I was told I would be held there, I was not able to remove my own personal belongings due to being handcuffed. An official handled me roughly, removing my earrings, bracelets, and necklaces, injuring my ears while doing so. To this day, I have still not received one of my necklaces that was taken.

6. I was held at Miramar for nine days. I arrived on July 25, 2026, and I believe I was transferred out on approximately August 2, 2026, around 3:00 am.
7. I was held in one room with 22 other women—23 of us in total. The room was small, about the size of the rooms used for attorney interviews.
8. There were no beds, cots, mattresses, or pillows in the room. We only received blankets or thermal blankets. We received one blanket per person. We slept on the floor, placing some of the blankets on the floor to have something to sleep on. This made it so we did not have enough blankets to sleep. Sleeping on the floor for eight days caused physical pain in my back, legs, and my whole body. We had to take turns about every four hours so that we could all rest.
9. The lights were kept on for twenty-four hours a day. This made it hard to sleep for me and all the women who were there.
10. My room had one toilet. It was not separated from the rest of the room in any way. We had to use it in front of one another, with no privacy at all. There were cameras in the area where we used the toilet. We had to use the blankets to have some privacy. I spent about four days without using the toilet because I was ashamed to relieve myself in front of other women. Another woman got her period while detained, her clothing was stained and an official had to bring her a change of clothes.
11. The room smelled very bad. We flushed the toilet over and over to try to get rid of the smell. But there was nothing we could do about the smell of people who had gone days without bathing and wearing the same clothes. We begged a military member to help us; they secretly passed us a disinfectant spray so we could spray the room. I believe they did this out of pity.

12. I wore the same clothes I was arrested in and was not permitted to shower for eight days. It was disgusting – I felt degraded and ashamed. We received a small toothbrush, the size of my finger. We received small packets of toothpaste, which was not enough to properly clean my teeth. We also received two moist towelettes per day for personal hygiene, but it was not enough to maintain cleanliness. Other women on their period received only two pads per day.

13. Next door to us there was a second room where between ten and twelve more women were held. That room was an office with a desk; it had no toilet or bathroom. The women held there came into my room to use the toilet. We saw that some women slept on the desk.

14. We were given food only once or twice a day. It was frozen food that had been heated in a microwave. I saw that the expiration dates printed on some of the food had already passed. I spent days without eating because of the food. I went hungry and this caused me to lose sleep. Some people received bags of tuna because they were diabetic.

15. We were given one or two bottles of water per day. When the bottles were empty, we refilled them with tap water from the sink attached to the toilet.

16. The room had air conditioning and was kept very cold. We had to stand next to each other to warm ourselves up. I was allowed two telephone calls per day, four minutes each. I used them to call my daughter and my partner.

17. On approximately the fourth day, I told an ICE officer that I needed to speak with an attorney. The officer refused and told me that I would have to wait until I was transferred to a detention center. I repeated my request on approximately four occasions, but officers continued to deny me access to an attorney. At the time, I had an attorney for my asylum

case whom I wanted to contact, but I was never permitted to speak with that attorney while at Miramar.

18. Shortly after I arrived at Miramar, officers began trying to convince me to sign papers agreeing to my own deportation. They would ask the room, "Who wants to volunteer to be deported?" They asked me over and over, "Why don't you sign? The immigration process can take years." They told me my asylum case would be denied. They asked me about four or five times. Many other women also refused to sign.

19. There was a woman who experienced a panic attack while at Miramar. She stated she could not breathe. Officials took her to the hospital, but she returned quickly after she got better. Others also asked for medical attention but were refused. After nine days at Miramar, I was handcuffed by my hands and feet and transferred to an immigration detention center in another state. I submitted a bond for my release, but it was denied and eventually I was deported to Venezuela.

20. What I went through at Miramar has caused me lasting emotional distress. I was diagnosed with Posttraumatic Stress Disorder and have been seeing a psychologist every two weeks.

21. I am giving this declaration because I do not want any other woman to go through what I went through at the Miramar facility.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Because I do not speak English fluently, Lois Guitierrez read this declaration to me in Spanish over the telephone on September 30, 2026, including the statement concerning penalties of perjury. Spanish is a language I fully understand. I had the opportunity to ask questions and make corrections. I understood the declaration as translated and confirmed that its contents are true and correct.

Date: 09/30/2026 /s/
Sandra Elena Valera Pereira

**CERTIFICATION**

I, Lois Gutierrez, declare that I am proficient in the English and Spanish languages. On September 30, 2026, I read the foregoing declaration and translated it faithfully and accurately into Spanish over a telephone call with the declarant. After I completed translating the declaration, the declarant confirmed that the contents of the foregoing declaration are true and accurate, and authorized me to affix his /s/ signature.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 30, 2026.

/s/ *Lois Gutierrez*
**Lois Gutierrez**