# DECLARATION OF JANE DOE

I, Jane Doe, hereby declare as follows:

1. I submit this declaration based on my personal knowledge and my own experiences while detained by U.S. Immigration and Customs Enforcement ("ICE") at the Miramar facility in South Florida. I am providing this declaration anonymously because I am afraid that ICE may retaliate against me or otherwise use my participation in this case against me.
2. I am currently 24 years old and originally from Paraguay. I came to the United States approximately three years ago. I am married to a United States Citizen and have a three-year-old daughter.
4. I arrived at the Miramar facility on or about August 8, 2026. I remained there for approximately 17 days in extremely overcrowded and inhumane conditions. Some of the women I met there had been held there for 20 and even 27 days.
5. When I arrived, I was placed in a room with approximately 25 women. The room was extremely small. I estimate that it measured approximately three steps in one direction by four steps in the other direction. I am describing this in footsteps because I do not know its dimensions.
6. During the day, we sat so close together that our bodies touched. At night, approximately 17 or 18 women slept in the room, and there was not enough space for us to lie down normally.
7. We were only given very basic items - a toothbrush, toothpaste, and a blanket.
8. The room had a toilet inside it. There was no wall, curtain, or other barrier around the toilet to provide privacy. If some of us needed to use the toilet at night, we had to step over other women because there was so little room to move.

9. There were no beds or mattresses in the room, only a concrete bench, and a concrete floor. Because the floor was cold, damp, and hard, we sometimes put blankets underneath our bodies and used them like mattresses.
10. During the day, the room became very hot because there were so many women inside.
11. Because the room was so crowded, some of us had to sit around and sleep immediately in front of the toilet, and others could see us when we used the toilet. I had bowel movements in the toilet while other women were right next to me.
12. There were also cameras in the area. One camera was positioned above us near the toilet, and another was above the door. From where the cameras were positioned, we could be observed while using the toilet. This made me extremely uncomfortable and embarrassed me. We had no privacy when performing the most basic bodily functions. At times, officers moved some of us into another room at night. The next morning, we would return to the same overcrowded room. On one occasion, about a week after I arrived, approximately 15 of us slept in an office while two male officers worked at computers in the same room overnight. I couldn’t sleep because I could hear the officers talking, joking, making fun of us, and typing in their computers.
13. We had extremely limited access to showers. During the approximately 17 days that I was at Miramar, I was allowed to take only one shower, after going approximately 11 days without one. When I was finally allowed to shower, I was required to do so very quickly. We were given only a short amount of time.
14. Because we could not shower regularly, we tried to clean ourselves using the sink or water source near the toilet. Officers complained when we used that area to wash parts of

our bodies, including our underarms. This was particularly humiliating to me because we had no other way to keep ourselves clean.

15. For all my time at Miramar, I wore the same clothing. Even after I was finally able to take that one shower, I had to put the same clothes back on. My family was allowed to bring clothing for me, but they could not visit me and had to leave my belongings at the entrance for staff. I did not receive the clothing until I was being transferred to my current detention center.

16. We also had to clean the cell ourselves with supplies provided by staff; there was no cleaning staff assigned to the room.

17. The food at Miramar was terrible. We were generally served the same small, packaged meal—rice and beans—three times a day, with very small portions that appeared to have been reheated. Eating the same small meal repeatedly made the situation even more difficult for me.

18. During my approximately 17 days at Miramar, I lost about eight pounds.

19. The water we had to drink from the sink had an unpleasant smell that reminded me of lake water.

20. During my detention at Miramar, I personally observed women who needed medication but were unable to get any. One woman had diabetes. Another suffered from migraines. But they were not given any medication.

21. Some women even had their prescribed medications among their belongings, which were controlled by the officers. I heard women repeatedly ask officers to bring them their medications. Officers would tell them that they would return with the medication, but they did not return with it.

22. Communication with people outside the facility was limited. My family was not permitted to visit me. We were generally permitted to make telephone calls late at night, around 11:00 p.m. or midnight. On some occasions, calls occurred even later. And these calls were limited to approximately three minutes. An officer used a timer, and when the three minutes were over, the officer would end the call.
23. Whether we were permitted to make a call depended on the officer working at the time. Sometimes we had to repeatedly ask before we were allowed to call.
24. I understood that the calls were recorded. Because of that, I was afraid to communicate with family members who might have immigration issues because I feared that information from the calls could be used against them.
25. I also personally observed other detained women having difficulty communicating with their attorneys. One woman who had been detained for approximately 27 days needed to sign a document for her attorney, but from what I observed and what she told me, her attorney was unable to get it to her.
26. Attorneys were not permitted to enter the detention area to meet with their clients.
27. While I was at Miramar, an officer took me aside once and presented me with a document to sign concerning my immigration case. The document was not read or adequately explained to me in Spanish. The officers spoke mostly in English, and I did not understand what I was being asked to sign.
28. I refused to sign it. I told them that I could not sign something that had not been read or explained to me and that I did not understand.
29. I also observed officers pressuring other women to sign to be deported, especially women who were crying or appeared particularly vulnerable. This made me realize that I had to

appear strong and not cry to avoid being constantly pressured by the officers. The more women cried, the more officers tried to convince them to sign.

30. I also heard officers tell detainees that if they did not leave the United States, they could spend 10 or 15 years in prison.
31. The conditions at Miramar made us feel desperate. Women cried frequently. The way they treated us and the pressure from officers made many of the women where I was held feel that signing paperwork was their only way to get out.
32. From the room where I was being held, I could observe areas where men were detained at Miramar.
33. The men's areas were even more overcrowded than the women's area. I observed approximately 60 men crowded into one room at times. I also observed approximately 200 men, by my estimate, in indoor and covered outdoor areas of the facility.
34. Many of the men were handcuffed and sitting in rows. I observed men who had to sleep sitting or standing because there was insufficient space. I did not see the men being provided with blankets or adequate ventilation.
35. The mistreatment that I got and observed at Miramar affected me physically and emotionally.
36. I felt depressed. The inadequate food, inability to bathe, overcrowding, lack of privacy, and uncertainty made the experience extremely difficult.
37. What I experienced at Miramar was total chaos and inhumane. No person should be treated the way we were treated there simply because of our immigration status.
38. I am providing this declaration because I do not want other people to experience what I experienced at Miramar.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Because I don't speak English fluently, a lawyer, Jeanette Ynfante, read this document to me on September 30, 2026, including the statement concerning perjury, in Spanish. Spanish is a language I fully understand. I had the opportunity to ask questions and make corrections. I understand the declaration as translated and confirm that its contents are true and correct.

September 30, 2026

_/s/ *Jane Doe*_
**Jane Doe**

**CERTIFICATION**

I, Jeanette Ynfante, declare that I am proficient in the English and Spanish languages. On September 30, 2026, I read the foregoing declaration and translated it faithfully and accurately into Spanish over a telephone call with the declarant.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 30, 2026.

/s/ *Jeanette Ynfante*
**Jeanette Ynfante**