**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
OFFICE OF ENFORCEMENT AND REMOVAL OPERATIONS**

# Operations of ERO Holding Facilities

**Policy Number:** 11087.2: Operations of ERO Holding Facilities
**Issue Date: January 31, 2024**
**Effective Date: January 31, 2024**
**Superseded:** 11087.1: *Operations of ERO Holding Facilities* (September 22, 2014).

## 1. Purpose/Background.

**1.1** This Directive provides U.S Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) officers with policy and procedures for operating holding facilities located within their respective field offices. These procedures include but are not limited to holding facility supervision and monitoring, detainee placement and searches, sexual abuse prevention and reporting, etc.

**1.2** While these guidelines apply to all holding facilities operated by ERO, located in ERO field offices, or jointly operated by ERO and Homeland Security Investigations (HSI) in shared offices, requirements for holding facilities are contained in the U.S. Department of Homeland Security (DHS) regulation, *Standards to Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities*.[1] and other ICE policies and procedures for responding to sexual abuse and assault incidents.[2]

**1.3** This Directive does not supplant other holding facilities requirements or procedures found in the applicable ICE detention standards.

## 2. Policy.

**2.1** Each holding facility shall maintain sufficient supervision of detainees, including through appropriate staffing levels and, where applicable, video monitoring, to protect detainees against sexual abuse and assault. When detainees in a holding facility are placed in rooms not originally designed for holding detainees (e.g., interview rooms or offices), they shall remain under continuous direct supervision and any unusual detainee behavior or detainee complaints shall be addressed as soon as practical and appropriately reported to a supervisor, and the detainee shall be separated from other detainees, if necessary.

**2.2** Staff is prohibited from retaliating against any person, including a detainee, who reports, complains about, or participates in an investigation into an allegation of sexual abuse, or for participating in sexual activity as a result of force, coercion, threats, or fear of force.

---

[1] 79 Fed. Reg. 13100 (Mar. 7, 2014), codified at 6 C.F.R. Part 115.
[2] See ICE Directive 11062.2, *Sexual Abuse and Assault Prevention and Intervention* (May 22, 2014).

**2.3** ERO field office personnel shall not carry firearms, oleoresin capsicum spray (aka OC spray or pepper spray), batons or other non-deadly force devices into a hold room, except as necessary and appropriate in responding to a security incident.

**2.4** ERO personnel shall be sensitive to detainees' cultural and religious practices. Taking into account safety or security concerns, whenever possible, detainees' religious beliefs and practices shall be accommodated.

**2.5** ICE ERO *Holding Facility Poster*, outlining the operational requirements for holding facilities, shall be posted in locations accessible to holding facility staff.

**2.6** Annual compliance assessments shall be required for all facilities operated by ERO, located in ERO field offices, or jointly operated by ERO and HSI in shared offices. Detention facilities with hold rooms and ICE Air Operations staging areas shall be excluded from this exercise, as they are assessed separately via the detention standards.

**3.** **Definitions.** The following definitions apply for purposes of this Directive only:

**3.1.** **Detainee.** An individual in ICE custody.

**3.2.** **Holding Facility.** A facility that contains hold rooms that are primarily used for the short-term confinement[3] of individuals who have recently been detained, or are being transferred to or from a court, detention facility, other holding facility, or other agency.

**3.3.** **Hold Room.** A holding cell, cell block, or other secure enclosure within a holding facility.

**3.4.** **Minor.** Any person under 18 years of age.

**3.5.** **Pat Search.** The sliding or patting of the hands over the clothed body of a detainee by staff to determine whether the individual possesses contraband. A pat search does not require the detainee to remove clothing, although the inspection includes a search of the detainee's clothing and personal effects.

**3.6.** **Strip Search.** A search that requires a person to remove or arrange some or all of their clothing so as to permit a visual inspection of the person's breasts, buttocks, or genitals.

**3.7.** **Visual Body Cavity Search.** A visual inspection of the anal or genital opening. This does not include contact or penetration of either opening.

**3.8.** **Body Cavity Search.** A search of a body cavity aided by the use of fingers or simple instruments.

[3] Short-term is defined as a period not to exceed 12 hours, absent exceptional circumstances.

**3.9.** **Cross-Gender Search.** A search conducted by a member of the opposite gender identity (i.e., male to female, and female to male).

**3.10.** **Exigent Circumstances.** Temporary and unforeseen circumstances that require immediate action.

**3.11.** **Gender Identity.** An individual's internal sense of being a man, woman, or another gender. A person's chosen gender identity may not always be based on or informed by the individual's biological sex or on the individual's sexual orientation.

**3.12.** **Transgender.** A person whose assigned sex at birth does not match their gender identity (i.e., internal sense of feeling male or female).

**3.13.** **Intersex.** Having sexual or reproductive anatomy or chromosomal pattern that does not seem to fit typical definitions of male or female. Intersex medical conditions are sometimes referred to as disorders of sex development.

**3.14.** **DHS PREA**: The Department of Homeland Security final rule Standards to Prevent, Detect and Respond to Sexual Abuse and Assault in Confinement Facilities, 6 C.F.R. Part 115.

**3.15.** **Sexual Abuse and Assault.**

1) **Sexual abuse and assault** includes:

   a) Sexual abuse and assault of a detainee by another detainee; and/or

   b) Sexual abuse and assault of a detainee by a staff member, contractor, or volunteer.

2) **Sexual abuse, harassment and assault of a detainee by another detainee** includes any of the following acts by one or more detainees, prisoners, inmates, or residents of the facility in which the detainee is housed who, by force, coercion, or intimidation, or if the victim did not consent or was unable to consent or refuse, engages in or attempts to engage in:

   a) Contact between the penis and the vulva or anus and, for purposes of this subparagraph, contact involving the penis upon penetration, however slight;

   b) Contact between the mouth and the penis, vulva, or anus, however slight.

   c) Penetration, however slight, of the anal or genital opening of another person by a hand or finger or by any object;

d) Touching of the genitalia, anus, groin, breast, inner thighs or buttocks, either directly or through the clothing, with an intent to abuse, humiliate, harass, degrade or arouse or gratify the sexual desire of any person; or

e) Threats, intimidation, or other actions or communications by one or more detainees aimed at coercing or pressuring another detainee to have sexual contact with any person and/or to engage in a sexual act.

3) **Sexual abuse, harassment and assault of a detainee by a staff member, contractor, or volunteer** includes any of the following acts, if engaged in by one or more staff members, volunteers, or contract personnel who, with or without the consent of the detainee, engages in or attempts to engage in:

a) Contact between the penis and the vulva or anus and, for purposes of this subparagraph, contact involving the penis upon penetration, however slight;

b) Contact between the mouth and the penis, vulva, or anus, however slight;

c) Penetration, however slight, of the anal or genital opening of another person by a hand or finger or by any object that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

d) Intentional touching of the genitalia, anus, groin, breast, inner thighs or buttocks, either directly or through the clothing, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

e) Threats, intimidation, harassment, indecent, profane or abusive language, or other actions or communications, aimed at coercing or pressuring a detainee to have sexual contact with any person and/or to engage in a sexual act;

f) Repeated verbal statements or comments of a sexual nature to a detainee;

g) Any display of the staff member's uncovered genitalia, buttocks, or breast in the presence of a detainee; or

h) The inappropriate visual surveillance of a detainee for reasons unrelated to official duties (e.g., staring at a detainee who is using a toilet in their cell to perform bodily functions; requiring a detainee to expose their buttocks, genitals, or breasts; or taking images of all or part of a detainee's naked body or of a detainee performing bodily functions).

**4. Responsibilities.**

**4.1** The **Executive Associate Director for ERO** is responsible for ensuring compliance with the provisions of this Directive within ERO.

**4.2** The **Assistant Directors for Custody Management and Field Operations** are responsible for ensuring compliance with the provisions of this Directive within their respective Divisions and Programs.

**4.3** **Field Office Directors (FODs), or their supervisory designees (Deputy Field Office Directors and Assistant Field Office Directors),** are responsible for ensuring that field office personnel follow the procedures in this Directive for operating holding facilities located within their respective field offices. More specifically, FODs are responsible for:

1) Ensuring that detainees are properly screened so that those with serious mental health disorders or conditions are expeditiously identified and those who exhibit signs of acute mental health distress are referred to mental health professionals pursuant to the applicable detention standards and policy;

2) Ensuring a coordinated, multidisciplinary team approach to responding to allegations of sexual abuse, harassment and assault occurring in holding facilities, or in the course of transit by ERO or ERO contract personnel to or from holding facilities, as well as to allegations made by a detainee at a holding facility of sexual abuse, harassment or assault that occurred elsewhere in ICE custody;

3) Ensuring that key information regarding ICE's zero-tolerance policy for sexual abuse, harassment and assault is visible or continuously and readily available to detainees (e.g., through posters, detainee handbooks, or other written formats);

4) Developing and maintaining a written evacuation plan for holding facilities in a location accessible only to employees and developing medical emergency procedures and response plans for medical emergencies (to include appropriate supervisory notification);

5) Considering the effect of the design, acquisition, expansion, or modification upon the agency's ability to protect detainees from sexual abuse, harassment and assault when designing or developing any new ERO holding facility and in planning any substantial expansion or modification of existing holding facilities, in coordination with ERO Custody Management, Headquarters Field Operations Division, the Office of Acquisition Management, and the Office of Asset and Facilities Management;

6) Considering how such technology may enhance the agency's ability to protect detainees from sexual abuse, harassment and assault when installing or updating a video monitoring system, electronic surveillance system, or other monitoring technology in a hold room in coordination with ERO Custody Management,

Headquarters Field Operations Division, the Office of Acquisition Management, and the Office of Asset and Facilities Management; and

7) Conducting an annual review of the application of this policy via the Holding Facilities Self-Assessment Tool at each holding facility within their area of responsibility to ensure ongoing compliance.

**4.4.1 ERO Officers are responsible for:**

1) Ensuring that each holding facility maintains sufficient supervision of detainees by taking into consideration the physical layout of each holding facility; the composition of the detainee population; the prevalence of substantiated and unsubstantiated incidents of sexual abuse, harassment and assault; the findings and recommendations of sexual abuse, harassment and assault incident review reports; and any other relevant factors, including but not limited to, the length of time detainees spend in custody at the holding facility;

2) Ensuring that detainees are provided a meal at least every six hours;

3) Ensuring that hold rooms are safe, clean, equipped with restroom facilities, and clear of objects that could be used as weapons against ERO personnel, contractors, or detainees;

4) Ensuring that males and females are not detained in the same hold room, unless they are a family unit;

5) Ensuring that unaccompanied minors, elderly detainees, or family units are not placed in hold rooms, unless they have demonstrated or threatened violent behavior, have a history of criminal activity, or pose an escape risk;

6) Ensuring that minors are detained in the least restrictive setting appropriate to their age and special needs, provided that such setting is consistent with the need to protect the minor's well-being and that of others, as well as with any other laws, regulations, or legal requirements;

7) Ensuring that minors are held apart from adults, minimizing sight, sound, and physical contact, unless the juvenile is in the presence of an adult member of the family unit or legal guardian, and provided there are no safety or security concerns with this arrangement;

8) Ensuring that detainees with disabilities are provided an equal opportunity to access, participate in, and benefit from in-custody programs, services, and activities and those with communication disabilities are provided with auxiliary aids and services as necessary to allow for effective communication and those who are illiterate or with limited English proficiency are provided with meaningful access to services;

9) Ensuring that all pat down searches are conducted in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs and ICE policy and that when pat down search indicates the need for a more thorough search, an extended search (i.e., strip search) it is conducted in accordance with ICE policies and procedures;

10) Ensuring that detainees are not searched or physically examined for the sole purpose of determining their gender.

**5. Procedures and Requirements.**

**5.1. Holding Facility Supervision and Monitoring – Procedures for ERO Officers.**

1) Account for and continuously monitor detainees and empty holding facilities upon the conclusion of daily operations in those field office locations operating on a daily schedule. Absent exceptional circumstances, no detainee should be housed in a holding facility for longer than 12 hours.

2) Monitor detainees for any apparent indications of a mental or physical health condition or signs of hostility, self-harm, or harm to others that may require closer supervision or emergency medical care.

3) Subject detainees to direct supervision, which shall include regular visual monitoring via facility staff and/or via a video camera placed inside the hold room where applicable. Physical hold room conduct checks shall also occur at least every 15 minutes.

4) Log all physical hold room checks, including the time of each check and any important observations.

**5.2. Hold Room Conditions – Procedures for ERO Officers.**

1) Provide minors and pregnant women with regular access to meals, snacks, milk, and juice, regardless of their time in custody.

2) Provide detainees with access to drinking water in hold rooms at all times.

3) If the hold room is not equipped with restroom facilities, ERO officers should position themselves within direct sight or earshot of the hold room so that detainees may request and have regular access to restroom facilities.

4) Closely monitor detainees using the restroom, consistent with the requirements of this Directive.

**5.3. Placement of Detainees with Specialized Needs – Procedures for ERO Officers.**

1) Detain pregnant individuals in the least restrictive setting available, provided such setting is consistent with the need to protect the well-being of the pregnant individual and others and separate them from other detainees, whenever possible.

2) A nursing detainee will not be separated from their child absent an articulable serious safety risk.

3) Detainees not placed in a hold room shall be seated in a designated area outside the hold rooms, under direct supervision and control.

4) If the physical layout of the holding facility precludes holding such individuals outside the hold room, they may be held in a separate room.

5) To the extent possible, hold unaccompanied minors apart from adults and younger minors separately from older minors. The unaccompanied minor may temporarily remain with a non-parental adult family member where the family relationship has been vetted to the extent feasible and it has been determined that remaining with the non-parental adult family member is appropriate, given the totality of circumstances.

**5.4. Detainees with Disabilities and Detainees Who are Limited English Proficient – Procedures for ERO Officers**

1) Provide any detainee who has a communication disability with auxiliary aids and services as necessary to allow for effective communication.

2) Provide any detainee who is illiterate or has limited English proficiency and speaks a language in which written material has not been translated with in-person or telephonic oral interpretation. This includes all ICE- and facility-related information and communications, including efforts to prevent, detect, and respond to sexual abuse (including written materials) and for matters relating to allegations of sexual abuse. Interpretation must be provided by someone other than another detainee unless the detainee expresses a preference and the FOD determines the interpretation to be appropriate.

**5.5. Searches of Detainees – Procedures for ERO Officers.**

1) *Pat Down Searches.*

   a) Where operationally feasible, an officer of the same gender (internal sense of being a man, woman, or another gender), gender identity, or declared gender as the detainee will perform the pat down search. All cross-gender pat searches must be documented.

b) Every detainee shall undergo a pat down search for weapons and contraband before being placed in a hold room. A pat down search shall be performed even if another agency or other ERO personnel reported completing one prior to the detainee's arrival at the ERO facility or transfer of custody.

c) Sharp objects, including pens, pencils, knives, nail files, and other objects that could be used as weapons or to deface property, as well as any smoking materials, matches, and lighters shall be removed from the detainee's possession.

2) *Strip and Visual Body Cavity Searches.*

a) All strip searches and visual body cavity searches must be documented in a detailed manner;

b) Cross-gender strip searches or cross-gender visual body cavity searches are not conducted except in exceptional and unforeseen circumstances, including consideration of officer safety. Cross-gender strip searches may be performed by medical practitioners; and

c) Visual body cavity searches of minors are conducted by a medical practitioner only and not by law enforcement personnel.

3) *Searches to Determine Gender* – If the detainee's gender is unknown, it may be determined during conversations with the detainee or by reviewing medical records (if available).

**5.6. Limits to Cross-Gender Viewing – Procedures for ERO Officers.**

1) Permit detainees to shower (where showers are available), perform bodily functions, and change clothing without being viewed by staff of the opposite gender, except in exceptional and unusual circumstances or when incidental to routine cell checks.

2) ERO personnel of the opposite gender must announce their presence when entering an area where detainees are likely to be showering, performing bodily functions, or changing clothing.

**5.7. Property – Procedures for ERO Officers.**

1) Search detainee parcels, suitcases, bags, bundles, boxes, and other property for contraband. Keep all detainee property outside the hold room in a safe and secure area out of the reach of detainees.

2) Allow detainees to keep personal inhaled medication on their person and have access to other prescribed medication as necessary.

3) Appropriately process, inventory, and safeguard detainee property (including funds, valuables, baggage, and other personal property), to ensure the return of all such property to the detainee prior to removal or upon release from ICE custody, pursuant to applicable ICE policies and detention standards.

**5.8. Written Logs – Procedures for ERO Officers.**

1) *Detention Logs* – Maintain a detention log for every detainee brought into custody, regardless of purpose (e.g., new arrival, awaiting legal visitation, awaiting interviews). At the conclusion of each day, the FOD shall ensure that an ERO supervisor reviews, dates, and signs the detention log. The detention log will record, at a minimum:

a) Detainee's name;

b) Gender;

c) Age;

d) A-Number;

e) Nationality;

f) Language spoken, and if a detainee is not proficient in English;

g) Known or reported disability;

h) Other special vulnerability (e.g., nursing mother);

i) Reason for placement (e.g., court run, removal, interview with detention officer);

j) Time in;

k) Mealtime;

l) Time out;

m) Final disposition (e.g., removed, transported to a county jail, Office of Refugee Resettlement placement);

n) Badge number of logging officer; and

o) Cross-gender pat-down search, strip search, and visual body cavity search information.

2) *Holding Facility Inspection Logs* – Inspect all hold rooms every 12 hours. Each ERO field office maintain a "Hold Room Inspection Log" to document the results of those inspections.

   a) The log will include the date, time, name, and signature of the officer conducting each inspection.

   b) Visual inspections of every hold room will be conducted at the beginning and conclusion of daily operations to ensure that the hold rooms are operational, plumbing is functional, and that no contraband has been introduced prior to placing a detainee into the room. Visual inspections will be recorded in the log.

   c) Any evidence of tampering with doors, locks, windows, grills, telephones, plumbing or electrical fixtures will be immediately reported to a supervisor for corrective action or repair and noted in the log. The hold room will not be utilized until the corrective action and/or repair is complete, and a supervisor at the Assistant Field Office Director or higher level has authorized its use.

**5.9. Holding Facility Plans for Evacuations and Medical Emergencies – Procedures for ERO Officers.**

   a) Be aware of the location of emergency medical supplies and equipment; and

   b) Respond immediately to observed or reported medical emergencies and contact local emergency medical services when a detainee is determined to need urgent medical care.

      i) If the detainee is removed from a holding facility for medical treatment, ERO personnel shall accompany and remain with the detainee until the completion of treatment and official medical clearance is provided.

      ii) If the detainee is hospitalized, appropriate supervisory notification shall occur.

**5.10. Sexual Abuse and Assault Prevention – Procedures for FODs.**

1) *Screening*

   a) Ensure that before placing detainees together in a hold room, there shall be consideration of whether a detainee may be at a high risk of being sexually abused or assaulted, and, when appropriate, shall take necessary steps to mitigate any such danger to the detainee.

   b) Ensure that the following criteria are considered in assessing detainees for risk of sexual victimization or abusiveness, to the extent that the information is available:

i) Whether the detainee has a mental, physical, or developmental disability;

ii) The age of the detainee;

iii) The physical build and appearance of the detainee;

iv) Whether the detainee has previously been incarcerated or detained;

v) The nature of the detainee's criminal history;

vi) Whether the detainee has any convictions for sex offenses;

vii) Whether the detainee has self-identified as Lesbian, Gay, Bisexual, Transgender or Intersex (LGBTI) or gender nonconforming;

viii) Whether the detainee has self-identified as previously having experienced sexual victimization; and

ix) The detainee's own concerns about their physical safety.

c) Implement appropriate controls on the dissemination of any sensitive information regarding a detainee provided pursuant to screening procedures.

d) When staff has a reasonable belief that a detainee is subject to a substantial risk of imminent sexual abuse, they shall take immediate action to protect the detainee.

e) For detainees identified as being at high risk for victimization, the FOD shall provide heightened protection, including continuous direct sight and sound supervision, single-housing, or placement in a hold room actively monitored on video by a staff member sufficiently proximate to intervene.

2) *Sexual Abuse and Assault Reporting*

a) Ensure that detainees are provided instructions on multiple ways they can confidentially, and if desired, anonymously report incidents of sexual abuse or assault and retaliation for reporting sexual abuse or assault, or staff neglect or violations of responsibilities that may have contributed to such incidents to ERO personnel.

b) Implement procedures for ERO personnel to accept reports made verbally, in writing, anonymously, and from third parties and promptly document any verbal reports.

c) Ensure that detainees are provided with instructions on how they can contact the DHS Office of Inspector General (OIG) (or, as appropriate, another public or

private entity which is able to receive and immediately forward detainee reports of sexual abuse or assault to agency officials) to confidentially and, if desired, anonymously, report these incidents.

d) All staff are required to report immediately and according to agency policy[4] any knowledge, suspicion, or information regarding a sexual abuse incident, retaliation against detainees or staff who reported or participated in a related investigation; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation.

e) Implement appropriate controls on the dissemination of any sensitive information regarding a reported sex abuse allegation, retaliation, or staff neglect.

f) If an alleged sex abuse victim is under the age of 18 or determined, after consultation with the relevant Office of the Principal Legal Advisor Office of the Chief Counsel, to be a vulnerable adult under a State or local vulnerable persons statute, the FOD shall report the allegation to the designated State or local services agency under applicable mandatory reporting laws.

**5.11. Responding to Sexual Abuse and Assault Incidents – Procedures for FODs.**

1) *Reporting Duties* – Ensure that all allegations of sexual abuse and assault occurring in holding facilities are immediately reported pursuant to the notification requirements of the ICE Directive on Sexual Abuse and Assault Prevention and Intervention.

2) *First Responder Duties (officers or agents)* – Ensure that upon learning of an allegation that a detainee was sexually abused or assaulted, the responder, or their supervisor:

a) Separates the alleged victim and abuser;

b) Considers whether any staff, contractor or volunteer alleged to have perpetrated sexual abuse should be removed from duties requiring detainee contact pending the outcome of an investigation and shall do so if the seriousness and plausibility of the allegation make removal appropriate.

c) Preserves and protects, to the greatest extent possible, any crime scene until appropriate steps can be taken to collect any evidence;

d) If the sexual abuse or assault occurred within a time period that still allows for the collection of physical evidence, requests the alleged victim not to take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating; and

[4] This includes methods by which staff can report misconduct outside of their chain of command.

e) If the sexual abuse or assault occurred within a time period that still allows for the collection of physical evidence, ensures that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating.

3) *First Responder Duties (non-officers or agents)* – If the first responder is not an officer or agent, the responder shall request the alleged victim not to take any actions that could destroy physical evidence, and then notify an officer or agent.

4) *Medical and Mental Health Care and Community and Victim Services*

a) Ensure that detainee victims of sexual abuse or assault have timely, unimpeded access to emergency medical and mental health treatment and crisis intervention services, including emergency contraception and sexually transmitted infections prophylaxis, in accordance with professionally accepted standards of care. This treatment must be without financial cost to the victim and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident.

b) Coordinate with ERO HQ and the agency Prevention of Sexual Assault Coordinators in utilizing, to the extent available and appropriate, community resources and services that provide expertise and support in the areas of crisis intervention and counseling to address victims' needs.

c) If a victim is transferred between DHS facilities covered by DHS PREA subpart A or B, the FOD shall, as permitted by law, inform the receiving facility of the incident and the victim's potential need for medical or social services.

d) If a victim is transferred from a DHS holding facility to a facility not covered by section (c) above, the FOD shall, as permitted by law, inform the receiving facility of the incident and the victim's potential need for medical or social services, unless the victim requests otherwise.

5) *Forensic Medical Examinations* – Where evidentiarily or medically appropriate, at no cost to the detainee, regardless of whether the victim names the abuser, and only with the detainee's consent, the FOD shall arrange for or refer an alleged victim detainee to a medical facility to undergo a forensic medical examination, including a Sexual Assault Forensic Examiner (SAFE) or Sexual Assault Nurse Examiner (SANE) where practicable. If SAFEs or SANEs cannot be made available, the examination can be performed by other qualified health care personnel. If, in connection with an allegation of sexual abuse or assault, the detainee is transported for a forensic examination to an outside hospital that offers victim advocacy services, the detainee shall be permitted to use such services to the extent available, consistent with security needs.

6) *Sexual Abuse and Assault Incident Reviews* – Conduct a sexual abuse and assault incident review at the conclusion of every investigation of sexual abuse or assault occurring at a holding facility and, unless the allegation was determined to be unfounded, prepare a written report recommending whether the allegation or investigation indicates that a change in policy or practice could better prevent, detect, or respond to sexual abuse and assault. Such review shall ordinarily occur within 30 days of ERO's receipt of the investigation results from the investigating authority.

   a) Implement the recommendations for improvement, or document its reasons for not doing so, in a written justification. The review, report and justification shall be forwarded to the ICE PSA Coordinator.

**6. Authorities/References.**

**6.1.** Standards to Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities, 79 Fed. Reg. 13100 (Mar. 7, 2014).

**6.2.** ICE Policy 11062.2: *Sexual Abuse and Assault Prevention and Intervention* (May 22, 2014).

**6.3.** Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended.

**6.4.** ICE Policy 11071.1: *Assessment and Accommodations for Detainees with Disabilities* (December 15, 2016).

**6.5.** ICE Policy 11032.4: *Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals* (July 1, 2021).

**6.6.** ICE Policy 11063.2: *Identification, Communication, Recordkeeping, and Safe Release Planning for Detained Individuals with Serious Mental Disorders or Conditions and/or Who Are Determined To Be Incompetent By An Immigration Judge* (April 5, 2022).

**7. No Private Right Statement.** This document is an internal policy statement of ICE. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Nor are any limitations hereby placed on otherwise lawful enforcement prerogatives of ICE.

DANIEL A BIBLE Digitally signed by DANIEL A BIBLE Date: 2024.01.31 16:44:46 -05'00'

**Daniel A. Bible**
**Executive Associate Director**
**Office of Enforcement and Removal Operation**
**U.S. Immigration and Customs Enforcement**