**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ORLANDO ROSALES SALMERON, et al.,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security, et al.,

Defendants.

**Case No. 1:26-cv- 26911**

Judge Beth Bloom

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND**
**MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs Orlando Rosales Salmeron and John Doe ("Plaintiffs"), by and through undersigned counsel, move under Federal Rules of Civil Procedure 23(a) and 23(b)(2), or alternatively 23(b)(1)(A), and Local Rule 23.1 to certify the Class defined in the Complaint, appoint Plaintiffs as class representatives, and appoint undersigned counsel as class counsel. In support, Plaintiffs state as follows:

**INTRODUCTION**

This action challenges the facility-wide conditions and practices to which people in civil immigration custody are subjected at the U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") Miramar Sub-Field Office, located at 2805 SW 145th Avenue, Miramar, Florida 33027 ("Miramar Facility"). Defendants use the Facility for prolonged detention despite its short-term administrative hold-room designation and design. People detained at the Miramar Facility face overcrowding, inadequate sleeping arrangements and sanitation, deficient food and water, unsafe heat and ventilation, inadequate medical care, barriers to confidential access to counsel, and coercive practices concerning immigration-related documents.

These conditions arise from common operational policies and practices. Whether Defendants' operation of the Miramar Facility violates the First and Fifth Amendments or the

Administrative Procedure Act ("APA") presents common questions capable of resolution through common evidence. Differences in individual experiences do not defeat certification because Plaintiffs challenge practices affecting the Class as a whole and seek declaratory and injunctive relief addressing those practices.

Congressional oversight corroborates the scope of these practices. During an unannounced congressional inspection on July 2, 2026, Representative Debbie Wasserman Schultz observed approximately 150 people confined in four holding rooms, including approximately 70 to 75 men in a room identified as having a capacity of 56. Congressional materials later reported a whistleblower allegation that the Facility held 342 people on a single day in August 2026. The Complaint and declarations describe the conditions and practices in greater detail.

Plaintiffs seek certification of the class defined in the Complaint:

> **All persons who are now detained, or will in the future be detained, in civil immigration custody at the Miramar Facility located at 2805 SW 145th Avenue, Miramar, Florida 33027.**

The proposed Class satisfies Fed. R. Civ. P. 23(a) and Rule 23(b)(2). Defendants' challenged policies and practices apply generally to the proposed Class and the requested declaratory and injunctive relief would remedy those common practices for the Class as a whole. Plaintiffs therefore respectfully request that the Court certify the Class, appoint the named Plaintiffs as Class Representatives, and appoint undersigned counsel as Class Counsel.

## BACKGROUND

### I. The Miramar Facility Is an Administrative Site for Short-Term Processing, Not a Residential Detention Facility.

The Miramar Facility is an ICE ERO site associated with the Miami Field Office. Its intended functions are administrative check-ins and short-term processing for people subject to orders of supervision or similar release conditions. It does not appear on ICE's public list of detention facilities and is not publicly identified as a facility operating under the Performance-Based National Detention Standards ("PBNDS") or National Detention Standards ("NDS"). Compl. ¶¶ 5, 63–65, 67, ECF No. 1. ICE Directive 11087.2, *Operations of ERO Holding Facilities*[1]

[1] U.S. Immigr. & Customs Enf't, ICE Directive No. 11087.2, *Operations of ERO Holding Facilities*, Jan. 31. 2024, https://www.ice.gov/doclib/foia/policy/directive11087.2.pdf (filed as Ex. 11, ECF No. 6-11).

("Directive") governs field-office holding facilities. It defines a holding facility as a site containing hold rooms used primarily for the short-term confinement of people recently detained or awaiting transfer to or from a court, detention facility, other holding facility, or another agency. The Directive defines short-term confinement as a period not exceeding 12 hours absent exceptional circumstances. ICE Directive 11087.2, § 3.2 & n.3, ECF No. 6-11. It also requires ERO personnel to provide a meal at least every six hours, maintain safe and clean hold rooms with restroom access, make drinking water available at all times, permit access to prescribed medication as necessary, and maintain a detention log recording each person's arrival, meal times, and departure. Compl. ¶¶ 47–49, 52, 54, 56–57, ECF No. 1; ICE Directive 11087.2, §§ 4.4.1(2)–(3), 5.2(2), 5.7(2), 5.8(1)(j)–(l), ECF No. 6-11. On June 24, 2025, ICE issued a nationwide waiver that purported to permit detention in hold rooms for as long as 72 hours. On June 23, 2026, a day before it was set to expire, Judge Pitts vacated that waiver under the Administrative Procedure Act, restoring the Directive's 12-hour framework. *Pablo Sequen v. Albarran*, No. 5:25-cv-06487-PCP, ECF No. 205 (N.D. Cal. June 23, 2026); Compl. ¶¶ 60–62, ECF No. 1. Defendants nonetheless have held people at Miramar for 72 hours or longer, including after the waiver was vacated. Decl. of Alvaro Guillemot ¶ 8, ECF No. 6-5 (four days); Decl. of Domingo Vi Asicona ¶ 2, ECF No. 6-7 (four days); Decl. of Ignacio Hernandez-Fuentes ¶ 2, ECF No.6-4 (five days); Decl. of Carlos Herrera-Velasquez ¶ 2, ECF No. 6-2 (seven days); Decl. of Sandra Elena Valera Pereira ¶ 6, ECF No. 6-8 (nine days); Decl. of Elsa del Carmen Joya Reyes ¶¶ 2, 7, ECF No. 6-3 (ten days); Decl. of Alvaro Arvelo Garcia ¶ 3, ECF No. 6-6 (approximately ten days); Decl. of Jane Doe ¶ 4, ECF No. 6-9 (approximately 17 days). Upon information and belief, the Miramar Facility began operating as a multi-day civil-detention site in or about October 2025. The building remained an administrative office with hold rooms, not a residential facility equipped with beds, adequate shower capacity, medical infrastructure, confidential legal-visitation space, or other systems necessary for overnight and multi-day custody. From the start of that expanded use through the July 2, 2026 inspection by Rep. Wasserman Schultz, facility personnel reportedly stated that the facility has undergone no inspection or assessment since its expanded use began.[2] Compl. ¶¶ 66, 69–70, 139, ECF No. 1.

[2] U.S. Immigr. & Customs Enf't, *Facility Inspections*, https://www.ice.gov/detain/facility-inspections (last visited Sept. 30, 2026); ICE Directive No. 11087.2 §§ 2.6, 4.3(7), ECF No. 6-11 (requiring annual assessments and field-office reviews, subject to § 2.6's exclusions for detention facilities with hold rooms and ICE Air Operations staging areas assessed separately under detention standards).

Upon information and belief, there has been no inspection or assessment even through her unannounced visit on September 30, 2026. Compl. ¶ 70, nn.17–18, ECF No. 1.

## II. Defendants Operate a Common System of Confinement That Subjects the Class to the Same Conditions and Restrictions.

The July 2 visit by Rep. Wasserman Schultz documented how the Miramar Facility operates when used for continuous detention. Approximately 150 people were confined in four holding rooms—two used for men and two used for women—with an exposed toilet in each room. One room measuring approximately 15 feet by 15 feet held about 70 to 75 men, despite a stated capacity of 56. A women's room measuring approximately seven feet by 14 feet held about 40 to 50 women. Rep. Wasserman Schultz described rooms filled with wall-to-wall people who could barely stand or sit and had to eat, sleep, urinate, and defecate in the same confined small space. Compl. ¶¶ 8–9, 76–77, ECF No. 1. Congressional letters released in September subsequently reported a whistleblower allegation that 342 people were held on one day in August in a facility reportedly designed to hold no more than 56 people. Compl. ¶¶ 1, 76, ECF No. 1. People are also confined overnight in offices without toilets, with some sleeping on desks. Valera Pereira Decl. ¶ 13, ECF No. 6-8; *see also* Jane Doe Decl. ¶ 12, ECF No. 6-9 (describing approximately 15 women spending a night in an office).

**Sleeping conditions.** Detained people are held overnight without beds, cots, or mattresses and must sleep on concrete floors or benches, sometimes with only thin aluminum blankets. Guillemot Decl. ¶¶ 10, 12, ECF No. 6-5; Hernandez-Fuentes Decl. ¶ 7, ECF No. 6-4; Valera Pereira Decl. ¶ 8, ECF No. 6-8; Jane Doe Decl. ¶ 9, ECF No. 6-9. Overcrowding leaves insufficient space to lie down, forcing people to take turns sleeping, stand through the night, or sleep beside or even on toilets and sinks. Herrera-Velasquez Decl. ¶¶ 9–11, 13, ECF No. 6-2; Arvelo Garcia Decl. ¶¶ 10, 12, 14, ECF No. 6-6; Vi Asicona Decl. ¶¶ 13, 16, ECF No. 6-7. Constant lighting further disrupts sleep. Joya Reyes Decl. ¶ 13, ECF No. 6-3; Hernandez-Fuentes Decl. ¶ 19, ECF No. 6-4; Valera Pereira Decl. ¶ 9, ECF No. 6-8. These conditions persist over consecutive nights, causing sleep deprivation and physical pain. Herrera-Velasquez Decl. ¶¶ 10, 19, ECF No. 6-2; Valera Pereira Decl. ¶ 8, ECF No. 6-8.

**Food and water.** Detained people receive inadequate food and drinking water and must rely on officers for meals and access to additional drinking water. Mr. Guillemot received one 200-milliliter bottle of water per day; officers refused his requests for more, leaving him to drink

yellowish, foul-smelling sink water. Guillemot Decl. ¶¶ 17–18 , ECF No. 6-5. Ms. Joya Reyes received one bottle to refill from a sink beside the toilet and described meals bearing expired dates, including one occasion when no food was provided from 1:00 p.m. until the following day. Joya Reyes Decl. ¶¶ 8, 15, ECF No. 6-3. Ms. Valera Pereira received food only once or twice daily, sometimes bearing expired dates, while Jane Doe described consistently small portions and unpleasant-smelling sink water. Valera Pereira Decl. ¶ 14, ECF No. 6-8; Jane Doe Decl. ¶¶ 17, 19, ECF No. 6-9. These recurring deficiencies depart from the Directive's requirements to provide meals at least every six hours and drinking water in hold rooms at all times. ICE Directive 11087.2, §§ 4.4.1(2), 5.2(2), ECF No. 6-11.

**Hygiene, sanitation, and bodily privacy.** Detained people go days without showers or clean clothing and receive inadequate hygiene supplies. Declarants describe being denied showers for seven to ten days, receiving no toothbrush or toothpaste, and having insufficient menstrual products. Herrera-Velasquez Decl. ¶ 15, ECF No. 6-2; Arvelo Garcia Decl. ¶¶ 17, 19–20, ECF No. 6-6; Valera Pereira Decl. ¶ 12, ECF No. 6-8; Joya Reyes Decl. ¶¶ 8, 19, ECF No. 6-3. Jane Doe received only one rushed shower during approximately 17 days and wore the same clothing throughout. Jane Doe Decl. ¶¶ 13–15, ECF No. 6-9. Toilets are located within crowded rooms where people sleep, and women confined in an adjacent office without a toilet had to enter another holding room to use one. Herrera-Velasquez Decl. ¶¶ 11, 13, ECF No. 6-2; Valera Pereira Decl. ¶ 13, ECF No. 6-8. Toilets are exposed to other detained people, and cameras are positioned near or toward toilet areas, causing embarrassment and depriving people of bodily privacy. Joya Reyes Decl. ¶ 14, ECF No. 6-3; Hernandez-Fuentes Decl. ¶ 6, ECF No. 6-4; Valera Pereira Decl. ¶ 10, ECF No. 6-8; Jane Doe Decl. ¶¶ 8, 11–12, ECF No. 6-9.

**Heat and ventilation.** Overcrowding and inadequate cooling and ventilation expose detained people to oppressive heat. Declarants describe hot rooms without fans or working air conditioning, with people sweating heavily. Hernandez-Fuentes Decl. ¶ 8, ECF No. 6-4; Herrera-Velasquez Decl. ¶ 16, ECF No. 6-2; Arvelo Garcia Decl. ¶ 16, ECF No. 6-6. Jane Doe reported that her room became very hot because so many women were confined inside. Jane Doe Decl. ¶ 10, ECF No. 6-9. When the air conditioning failed during Ms. Joya Reyes's detention, the heat became unbearable and another woman fainted and was taken to the hospital. Officers placed a fan outside the cell, but it provided no ventilation while the door remained closed. Joya Reyes Decl. ¶ 16, ECF No. 6-3. These conditions are compounded by limited drinking water and

prolonged restrictions on bathing and changing clothes. Guillemot Decl. ¶¶ 15, 17–18, ECF No. 6-5; Joya Reyes Decl. ¶¶ 8, 19, ECF No. 6-3; Herrera-Velasquez Decl. ¶ 15, ECF No. 6-2.

**Medical care and medication.** Detained people report recurring failures to provide needed medical attention and prescribed medication. Mr. Hernandez-Fuentes received blood-pressure medication intermittently and required an ambulance response after he began shaking and feeling weak. Hernandez-Fuentes Decl. ¶¶ 9, 12–14, ECF No. 6-4. Ms. Joya Reyes repeatedly requested care for severe headaches and diarrhea; when she later lost consciousness, no one checked her vital signs before returning her to the cell. Joya Reyes Decl. ¶¶ 15, 17–18, ECF No. 6-3. Other declarants describe untreated bleeding injuries, denied requests for medical attention, and officers failing to deliver prescribed medications despite repeated requests. Herrera-Velasquez Decl. ¶¶ 4, 7, ECF No. 6-2; Valera Pereira Decl. ¶ 19, ECF No. 6-8; Jane Doe Decl. ¶¶ 20–21, ECF No. 6-9. Fire Rescue records document 194 incidents at the Facility's address between July 1, 2025, and July 1, 2026, including 49 in June and eight on July 1. Miramar Fire Rescue & Police Call Records (filed as Ex. 12, ECF No. 6-12). Although individual medical needs differ, Plaintiffs challenge the common procedures governing access to care, medication delivery, and emergency response for everyone confined at Miramar.

**Attorney access.** Defendants' telephone and visitation practices impede detained people's ability to retain and consult counsel confidentially. Declarants describe denied attorney calls, brief calls within earshot of officers and other detained people, and retained counsel unable to reach their clients. Herrera-Velasquez Decl. ¶ 18, ECF No. 6-2; Arvelo Garcia Decl. ¶ 18, ECF No. 6-6; Joya Reyes Decl. ¶¶ 9–12, ECF No. 6-3; Valera Pereira Decl. ¶¶ 16–17, ECF No. 6-8. Attorneys are barred from entering the detention area, and one declarant observed a woman unable to receive a document from her attorney. Jane Doe Decl. ¶¶ 25–26, ECF No. 6-9. Attempts to arrange legal calls through ICE's designated telephone and email channels encountered a full voicemail box, disconnected calls, and unanswered requests. Decl. of Jacqueline Hurst ¶¶ 2–6, ECF No. 6-10. These recurring barriers arise from the Facility's communication and visitation practices and can be addressed through common procedures for confidential legal calls, in-person visitation, call scheduling, and delivery of legal documents. These restrictions turn on facility-wide practices, not the merits of any person's immigration case.

## III. Defendants' Written Policies, Notice, and Common Practices Tie the Class Together.

ICE Directive 11087.2 establishes common procedures for ERO holding facilities and assigns responsibility for compliance to the ERO Executive Associate Director, Defendant Marcos D. Charles, and Field Office Directors, including Defendant Matthew Elliston, or their supervisory designees. Directive §§ 1.1, 3.2, 4.1, 4.3, ECF No. 6-11. It defines short-term confinement as not exceeding twelve hours absent exceptional circumstances and directs daily-schedule field-office locations to empty their holding facilities at the conclusion of daily operations. *Id.* §§ 3.2 n.3, 5.1(1), ECF No. 6-11.

The Directive prescribes safeguards concerning meals at least every six hours; safe, clean rooms with restroom facilities; drinking water at all times; regular restroom access where rooms lack toilets; and access to prescribed medication. *Id.* §§ 4.4.1(2)–(3), 5.2(2)–(3), 5.7(2), ECF No. 6-11. It also requires mental-health screening and referrals, medical-emergency procedures and response plans, continuous monitoring, 15-minute physical checks, and documentation of those checks. *Id.* §§ 4.3(1), (4), 5.1(1)–(4), ECF No. 6-11. Its privacy provisions restrict opposite-gender viewing during showering where showers are available, bodily functions, and changing clothing, subject to specified exceptions, and require opposite-gender staff to announce their presence. *Id.* § 5.6(1)–(2), ECF No. 6-11. Individual detention logs must record time in, mealtime, time out, and final disposition; hold rooms must be inspected every 12 hours, with additional visual inspections at the beginning and conclusion of daily operations. *Id.* § 5.8(1)(j)–(m), (2)(a)–(b), ECF No. 6-11. Annual assessments and field-office reviews provide further oversight, subject to § 2.6's exclusions for facilities assessed separately under detention standards. *Id.* §§ 2.6, 4.3(7), ECF No. 6-11. Importantly, these procedures do not supplant requirements in applicable ICE detention standards. *Id.* § 1.3, ECF No. 6-11.

Defendants routinely depart from these safeguards through common operational decisions governing occupancy, duration of confinement, sleeping arrangements, food and water, hygiene, privacy, temperature, medical care, and confidential legal communication. Defendants receive notice of these through complaints from detained people and their families, communications from counsel and advocacy organizations, public reporting, congressional oversight, and recurring medical emergencies. The July 2 inspection documented crowding, floor sleeping, inadequate necessities, and barriers to counsel; the September 30 follow-up visit reported continuing sanitation, shower, and medical-care deficiencies. This evidence supports common questions

concerning what responsible officials knew and how they responded while continuing to use Miramar for prolonged confinement.

## IV. The Common Policies and Conditions Cause Significant Harm.

The challenged conditions cause immediate physical and psychological harm and compound one another. Crowding, constant lighting, and sleeping on concrete disrupt sleep and cause pain; inadequate food and water cause hunger, thirst, and weight loss; and limited bathing and exposed toilets cause humiliation and distress. Guillemot Decl. ¶¶ 10, 15, 17–20, 27, ECF No. 6-5; Herrera-Velasquez Decl. ¶¶ 9–16, 19–20, ECF No. 6-2; Joya Reyes Decl. ¶¶ 13–19, 21–22, ECF No. 6-3; Valera Pereira Decl. ¶¶ 8–14, 20, ECF No. 6-8. Medical needs go unmet: Mr. Hernandez-Fuentes received blood-pressure medication only intermittently and required an ambulance response, while Ms. Joya Reyes lost consciousness without having her vital signs checked. Hernandez-Fuentes Decl. ¶¶ 9, 13–14, ECF No. 6-4; Joya Reyes Decl. ¶ 18, ECF No. 6-3. Restrictions on attorney communication leave detained people unable to consult retained counsel while officers pressure them to sign immigration-related documents, impairing their ability to make informed decisions affecting their liberty and immigration cases. Joya Reyes Decl. ¶¶ 10–12, 20, ECF No. 6-3; Valera Pereira Decl. ¶¶ 17–18, ECF No. 6-8; Jane Doe Decl. ¶¶ 25–31, ECF No. 6-9. The risks have materialized in medical emergencies: Mr. Hernandez-Fuentes required an ambulance response after he began shaking and feeling weak, and Ms. Joya Reyes lost consciousness but received no assessment of her vital signs. Hernandez-Fuentes Decl. ¶¶ 13–14, ECF No. 6-4; Joya Reyes Decl. ¶ 18, ECF No. 6-3. Exposed toilets and cameras positioned near toilet areas also deprive detained people of bodily privacy, causing shame and distress and leading some to avoid using the toilet for days. Joya Reyes Decl. ¶ 14, ECF No. 6-3; Valera Pereira Decl. ¶ 10, ECF No. 6-8; Jane Doe Decl. ¶¶ 11–12, ECF No.6-9; Herrera-Velasquez Decl. ¶¶ 11–14, ECF No. 6-2.

## V. The Named Plaintiffs and the Proposed Class Are Subject to the Same Facility-Wide Practices.

Plaintiff Orlando Rosales Salmeron entered custody at the Miramar Facility on September 28, 2026 and remained detained there as of the filing of the Complaint. Plaintiff John Doe entered custody at the Miramar Facility on September 30, 2026 and remained detained there as of the filing of the Complaint.

The named Plaintiffs challenge the same facility-wide practices affecting the proposed Class and seek declaratory and injunctive relief that would benefit everyone detained at Miramar. Both seek to serve as Class Representatives. Compl. ¶¶ 146, 151, ECF No. 1. Although Class membership changes as people arrive and others are released, removed, or transferred, members are identifiable through ICE's custody records, including the arrival and departure logs required by Directive 11087.2 § 5.8(1). Declarants describe approximately 150 to 200 people confined in the garage alone, demonstrating the substantial number of people exposed to the challenged practices. Arvelo Garcia Decl. ¶ 4, ECF No. 6-6; Vi Asicona Decl. ¶ 8, ECF No. 6-7. Continuing turnover and the inclusion of future detainees further make joinder impracticable.

## VI. Detention at the Miramar Facility Is Inherently Transitory, and Provisional Certification Is Appropriate if Additional Proceedings Are Needed.

Detention at the Miramar Facility is temporary and unpredictable. Defendants control transfers, releases, and removals, leaving detained people unable to know whether they will remain at Miramar long enough for the Court to decide class certification. As individuals leave, others enter and are subjected to the same challenged practices. *See* Compl. ¶¶ 136–143, ECF No. 1; Guillemot Decl. ¶¶ 8, 26, ECF No. 6-5; Joya Reyes Decl. ¶¶ 7, 21, ECF No. 6-3; Valera Pereira Decl. ¶¶ 6, 19, ECF No. 6-8. It is well settled that "the necessary personal stake in a live class-action controversy sometimes is present even when the named plaintiffs own individual claim has become moot." *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 705 (11th Cir. 2014). This recognized exception applies when a named plaintiff's claim is inherently transitory and becomes moot "before the district court can reasonably be expected to rule on a certification motion." *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975). A claim may be inherently transitory not only when no plaintiff can maintain an active claim through certification, but also when it is difficult to identify, at filing, which prospective plaintiff will remain subject to the challenged conduct long enough for the Court to rule. *Dunn v. Dunn*, 148 F. Supp. 3d 1329, 1338–40 (M.D. Ala. 2015).

The Supreme Court recognizes that a detention class may proceed in these circumstances because the claims are inherently transitory and certification relates back to the filing of the complaint. *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991). The inquiry concerns the class as a whole, not the happenstance of a representative's transfer. *United States v. Sanchez-Gomez*, 584 U.S. 381, 386 (2018).

A post-filing transfer of the named Plaintiffs does not moot the class claims if the requirements for relation back are satisfied—as they are here. Plaintiffs moved promptly, currently detained people remain subject to the challenged practices, and the requested relief addresses an ongoing facility-wide system. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1045–51 (5th Cir. 1981); *Stein*, 772 F.3d at 706–07. The *Barco Mercado* court applied the same doctrine after the representative was transferred, concluding that uncertain detention made the claims inherently transitory. *Barco Mercado v. Noem*, 800 F. Supp. 3d 526 (S.D.N.Y. 2025).

The present record supports final certification. If the Court concludes that limited class discovery or additional evidence is needed, Plaintiffs request provisional certification rather than denial. The Court may postpone its determination under S.D. Fla. L.R. 23.1(c) pending discovery or other necessary preliminary procedures. In addition, any order granting or denying class certification may be altered or amended before final judgment under Fed. R. Civ. P. 23(c)(1)(C). Given the rapid turnover and ongoing risk of constitutional harm, the Court should provisionally certify the same Class for purposes of interim relief and set an expedited schedule for targeted production of custody logs, occupancy records, written policies, meal and water records, medical and incident records, temperature and HVAC data, camera information, and legal-access protocols. *See Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235, 1267 (S.D. Fla. 2025); *Barco Mercado*, 800 F. Supp 3d at 558-64.

## ARGUMENT

### I. The Proposed Class Satisfies the Requirements for Class Certification Under Fed. R. Civ. P. 23.

Federal Rule of Civil Procedure 23 governs class certification. It is proper where the party seeking certification demonstrates: (1) each prerequisite of Rule 23(a) has been met; and (2) the proposed class satisfies at least one of the requirements listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Both elements are met here.

The proposed Class satisfies each of the Rule 23(a) requirements, which are as follows: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

The proposed Class also satisfies the requirements listed in Rule 23(b)(2). Certification is appropriate under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making injunctive relief appropriate with respect to the Class as a whole. Courts have applied Rule 23(b)(2) to systemic challenges involving detention policies and institutional conditions. *See, e.g., Gayle v. Meade*, 614 F. Supp. 3d 1175, 1197 (S.D. Fla. 2020); *Braggs v. Dunn*, 317 F.R.D. 634, 667 (M.D. Ala. 2016); *Barco Mercado*, 800 F. Supp 3d at 564-65.

Civil rights actions are particularly amenable to class treatment as Rule 23 was enacted to "facilitate the bringing of class actions in the civil-rights area." 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1775 (3d ed.); *H.C.R. v. Mullin*, 825 F. Supp. 3d 1267, 1294 (M.D. Fla. 2026) ("Rule 23(b)(2) 'has been liberally applied in the area of civil rights.'") (quoting *Florida Immigrant Coalition*, 780 F. Supp. 3d at 1268). The arguments in favor of class certification are especially strong in this context, where individual Class members are unlikely to be able to pursue their claims individually. People in civil immigration detention are unlikely to bring their own civil rights claims, since they are all detained and largely lack counsel. *See Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014) (certifying class of people in immigration detention because, among other things, "many do not speak English, a majority do not have counsel, and most are unlikely even to know that they are members of the proposed class"). The purpose behind class actions is to provide individuals with the means of obtaining redress for claims that would be difficult to bring in individual litigation and to deter wrongdoing. *See Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1307 (S.D. Fla. 2015). "Thus, doubts regarding the propriety of class certification should be resolved in favor of certification." *Id.* (cleaned up).

## II. The Proposed Class Satisfies Fed. R. Civ. P. 23(a).

### A. Joinder Is Impracticable.

The proposed class satisfies the requirement that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although no fixed numerical threshold applies, the Eleventh Circuit generally regards fewer than approximately twenty-one members as inadequate and more than forty as adequate, subject to the circumstances of the case. *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489–90 (S.D. Fla. 2003) (citing *Cox v. Am. Cast Iron Pipe*

*Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666, 671–72 (S.D. Fla. 2011).

Approximately 150 people were held at the Miramar Facility during the July 2 inspection, and a whistleblower later reported that the population reached 342 on one day in August. The Class also includes future members and continuing turnover makes a single headcount an incomplete measure. New members enter as others are transferred, removed, or released. *See Reid*, 297 F.R.D. at 189; *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 368 (S.D.N.Y. 2019) ("Numerosity is also satisfied because joinder would be impracticable. New members regularly and continuously join the proposed class as their SIJ status petitions are adjudicated."); *H.C.R.*, 825 F. Supp. 3d at 1289 (granting class certification where proposed class was "fluid" as ICE regularly transfers detainees between facilities).

Here, practical considerations independently make joinder infeasible. Class members are detained; transfers may occur without warning; the duration of custody at the Miramar Facility is uncertain; many members lack counsel, English proficiency, or resources; and the action seeks prospective relief for people who have not yet been detained. Separate suits would duplicate the same facility-level proof and risk inconsistent orders governing the same rooms and systems. *See Gayle*, 614 F. Supp. 3d at 1197. Rule 23(a)(1) is satisfied.

B. The Class Shares Common Questions Capable of Classwide Resolution.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "relatively light burden" does not require that all questions of law and fact be common to the putative class members. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009); *see also In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 405 (M.D. Fla. 2018). The proposed class satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc.*, 564 U.S. at 350; *H.C.R.*, 825 F. Supp. 3d at 1292. The common contention of injury "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Wal-Mart Stores, Inc.*, 564 U.S. at 350. Factual differences among class members do not necessarily defeat certification where the claims share essential characteristics and the disputed issues are susceptible to classwide proof. *See Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (stating that "factual differences among the claims of the putative class members do not defeat certification.").

Rule 23(a)(2) requires questions capable of generating common answers that materially advance resolution of the class claims. *Wal-Mart Stores, Inc.*, 564 U.S. at 350. The requirement is satisfied where the claims arise from the common policies or institutional practices and can be evaluated through common evidence, even if individual class members experienced those practices in somewhat different ways. "What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (citation omitted).

This action presents the following common questions:

(1) whether Defendants' facility-wide policies and practices of overcrowding holding rooms; requiring persons held overnight to sleep on concrete floors without beds or safe raised sleeping surfaces; failing to provide adequate food, potable water, showers, and basic hygiene supplies; requiring detained people to use toilets in view of others and, upon information and belief, active, unshielded surveillance cameras; subjecting detained people to unsafe temperatures and inadequate ventilation; and failing to provide adequate medical screening, medication access, treatment, and emergency response—separately or in combination—violate the Fifth Amendment to the United States Constitution;

(2) whether Defendants' facility-wide barriers to retaining, consulting, and communicating confidentially with counsel violate the First and Fifth Amendments to the United States Constitution;

(3) whether Defendants maintain a common policy or practice of coercing immigration-related signatures or waivers through the challenged conditions, threats, deprivation of necessities, material misrepresentations, untranslated or inadequately explained documents, or denial of a reasonable opportunity to consult counsel, in violation of the Fifth Amendment and the prohibition on threats or coercion in 8 C.F.R. § 287.8(c)(2)(vii), and, to the extent final agency action is established, 5 U.S.C. § 706(2)(A) and (B); and

(4) whether Defendants have unlawfully withheld or unreasonably delayed discrete, legally required actions under Directive 11087.2, in violation of 5 U.S.C. § 706(1).

These questions can be resolved through evidence common to the Class. For the conditions-of-confinement claim in **Count I**, that evidence includes room dimensions and occupancy records; sleeping arrangements; food, water, and hygiene practices; toilet partitions and camera placement; temperature and ventilation records; medical staffing and protocols; and medication procedures. Defendants' policies, operational justifications, and supervisory decisions will also permit a common determination of whether the challenged restrictions are reasonably related to legitimate nonpunitive objectives or are excessive in relation to those objectives. *See Bell v. Wolfish*, 441 U.S. 520, 537–39 (1979). To the extent the applicable standard requires proof of deliberate indifference, detention logs, incident reports, complaints, and supervisory communications will bear on Defendants' shared knowledge of serious risks and their response. For the access-to-counsel claim in **Count II**, common proof includes attorney-call systems, visitation rules, detainee locator practices, and policies governing confidential legal communication. For the coercion claim in **Count III**, document templates, translations, staff instructions, supervisory directives, and evidence of recurring threats, misrepresentations, deprivation of necessities, or restrictions on consultation with counsel will permit a common assessment of the challenged document-presentation and signature practices. For **Count IV**, written directives, detention records, and evidence of facility practices will establish whether Defendants failed to perform identified, discrete, legally required acts when the applicable triggering circumstances or deadlines arose. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64–65 (2004). This common evidence will generate answers central to each claim without requiring separate adjudication of every Class member's experience. *See Gayle*, 614 F. Supp. 3d at 1197; *Braggs*, 317 F.R.D. at 654–58; *Barco Mercado*, 800 F. Supp 3d at 562-63; *H.C.R.*, 825 F. Supp. 3d at 1292–93.

Proposed class members also share common facts. All class members are subject to the same confinement conditions and barriers to access to counsel, caused by Defendants. The Defendants' policies and practices with respect to confinement conditions and attorney access affect all class members: they do not arise out of circumstances unique to each member. These facts satisfy the commonality requirement. *See Gayle*, 614 F. Supp. 3d at 1197 (finding commonality where plaintiffs were subject to the "same substantial risk of serious harm" (internal

quotation marks omitted)). The commonality inquiry does not require that all class members suffer a factually identical injury. *See, e.g., Vega*, 564 F.3d at 1268; *see also Florida Immigrant Coalition*, 780 F. Supp. 3d at 1267 (rejecting state defendants' argument that commonality did not exist when immigrant class members had individualized differences in their situations) (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 349). The requested class includes shorter stays because Plaintiffs challenge restrictions and risks that can arise before twelve hours, including barriers to confidential attorney consultation, toilet privacy, medical screening, and access to needed medication. Other courts have included shorter stays on such evidence. *See Moreno Gonzalez v. Noem*, No. 25 C 13323, slip op. at 7–8 (N.D. Ill. Nov. 17, 2025), ECF No. 87; *Pablo Sequen v. Albarran*, No. 5:25-cv-06487-PCP, slip op. at 38 n.116 (N.D. Cal. Nov. 25, 2025), ECF No. 138. All proposed class members seek the same declaratory and injunctive relief. All proposed class members, current and future, are entitled to the protections afforded by the Fifth and First Amendments. The Court's determination of the legality of Defendants' actions and inactions on one or more of the grounds alleged by all class members will resolve central issues "in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350; *Florida Immigrant Coalition*, 780 F. Supp. 3d at 1267 ("For purposes of commonality, even a single common question will do.") (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 359). Because Plaintiffs challenge a class-wide lack of adequate confinement conditions and access to counsel that applies broadly and uniformly to the entire class, Rule 23(a)(2)'s commonality requirement is satisfied.

C. The Named Plaintiffs' Claims Are Typical.

Typicality exists when the representatives and absent members have the same or similar injuries, the challenged conduct is common rather than unique to the representatives, and the claims arise from the same event, pattern, or practice and legal theory. *Ibrahim v. Acosta*, 326 F.R.D. 696, 700 (S.D. Fla. 2018); *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla. 2012). Minor factual differences do not defeat typicality. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 686 (S.D. Fla. 2004) (quoting *Kornberg*, 741 F.2d at 1337).

Here, the proposed Class Representatives' claims arise from the facility-wide policies and practices challenged by the Class: inadequate conditions of confinement, barriers to confidential communication with counsel, coercive document-presentation and signature practices, and failures to perform discrete duties required by ICE Directive 11087.2. Plaintiffs seek declaratory and injunctive relief addressing those common practices under the same legal and remedial theories advanced on behalf of the Class. *See Gayle*, 614 F. Supp. 3d at 1198 ("The named plaintiffs' claims are typical if they stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory."). Their claims are not only representative of, but inextricable from, those of the class they seek to represent.

Class members may have different backgrounds or individual circumstances; however, this does not defeat typicality. "[T]he commonality and typicality requirements of Rule 23(a) tend to merge," as both serve to ensure the claims of the class representatives align with those of absent class members. *General Telephone Co. of Southwest*, 457 U.S. at 157. Because all class members are subject to the same lack of access to counsel and raise the same legal challenges, the typicality requirement is satisfied. Those variations do not change the common source of injury or the constitutional and APA theories. *Barco Mercado* likewise found typicality where the representative remained for approximately two days while others stayed longer and experienced different medical consequences. 800 F. Supp. 3d at 563-64. Rule 23(a)(3) is satisfied.

D. The Named Plaintiffs Will Fairly and Adequately Protect the Class; Plaintiffs' Counsel Are Qualified.

Rule 23(a)(4) asks whether the representatives have interests antagonistic to the class and whether they will prosecute the action vigorously. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *H.C.R.*, 825 F. Supp. 3d at 1293. Adequacy depends on the resolution of two questions: "(1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and . . . (2) whether plaintiffs have interests antagonistic to those of the rest of the class." *See Cheney*, 213 F.R.D. at 496 (quoting *Kirkpatrick,* 827 F.2d at 726).

Here, Plaintiffs and the absent Class members are united by the same objective: obtaining injunctive relief that ends the facility-wide conditions of confinement and attorney-access restrictions and ensures constitutionally adequate treatment for everyone detained at the Miramar Facility. They seek no individualized damages and no benefit that would diminish relief for others.

Each understands the nature of the case, wishes to serve, is prepared to communicate with counsel, and will pursue the action for the Class. The Named Plaintiffs have alleged the same injuries, arising from the same conduct, and they seek the same injunctive and declaratory relief, which will apply equally to the benefit of all class members. No conflict or antagonism exists.

In addition, Plaintiffs' counsel are qualified. Under Federal Rule of Civil Procedure 23(g), any order certifying a class must appoint class counsel who will "fairly and adequately represent the interests of the class." In deciding whether counsel meet that standard, courts consider "the work counsel has done in identifying or investigating potential claims in the action," "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *see, e.g., Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL 1308368, at *2 (N.D. Ga. Mar. 23, 2015); *Gayle*, 614 F. Supp. 3d at 1199 n. 36 (recognizing Americans for Immigrant Justice ("AI Justice") and the Southern Poverty Law Center ("SPLC") as having extensive experience in representing clients in class action suits).

Here, Plaintiffs' counsel amply satisfy these criteria. Proposed Class Counsel have significant experience with complex immigration litigation and class actions, including challenges to detention conditions and restrictions on access to counsel, and will fairly and adequately protect the interests of the Class. AI Justice is a non-profit law firm dedicated to promoting and protecting the basic rights of immigrants. AI Justice provides direct legal services to immigrants who are detained and facing removal proceedings in all South Florida detention facilities. AI Justice serves as a watchdog on immigration detention practices and policies and its Detention and Advocacy staff have authored numerous reports concerning conditions at ICE detention facilities in Florida. AI Justice has represented immigrants in federal civil rights cases in the Southern and Middle Districts of Florida. Additional facts establishing the adequacy of Proposed Class Counsel are set forth fully in the concurrently filed declaration of Paul R. Chavez, attached hereto as Exhibit 1. SPLC, based in Montgomery, Alabama, is a non-profit civil rights organization dedicated to seeking justice for the most vulnerable members of society. The SPLC focuses on impact litigation in various practice areas, which include immigrant justice and criminal justice reform issues. The SPLC has served as class counsel in more than 30 cases, many of which include challenges to conditions of confinement. Additional facts establishing the adequacy of Proposed Class Counsel

are set forth fully in the concurrently filed declaration of Anne Janet Hernandez Anderson, attached hereto as Exhibit 2.

Counsel from AI Justice and SPLC have investigated the Miramar Facility, reviewed ICE policies and inspection materials, communicated with detained people and attorneys, developed the constitutional and APA claims, and prepared the Complaint and emergency filings. Class Counsel invested considerable time gathering facts and researching how the conditions of confinement and lack of access to counsel at the Miramar Facility violates the Constitution. The Court should appoint undersigned counsel as Class Counsel.

## III. The Proposed Class Satisfies Rule 23(b)(2) and Alternatively Rule 23(b)(1)(A).

Rule 23(b)(2) applies when the opposing party has acted or refused to act on grounds that apply generally to the class, making final injunctive or corresponding declaratory relief appropriate for the class as a whole. Fed. R. Civ. P. 23(b)(2). The key is the indivisible nature of the remedy: a single injunction or declaratory judgment must provide relief to each class member. *Wal-Mart Stores, Inc.*, 564 U.S. at 360; *Amchem Prods., Inc v. Windsor*, 521 U.S. 591, 614 (1997). "Rule 23(b)(2) has been liberally applied in the area of civil rights . . . ." *Braggs*, 317 F.R.D. at 667 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment ("[A]ctions in the civil-rights field" are paradigmatic Rule 23(b)(2) class actions); *H.C.R.*, 825 F. Supp. 3d at 1294 ("Like many other courts, this Court finds that civil rights cases seeking only injunctive and related declaratory relief, are the 'very paradigm of a proper 23(b)(2) class.'") (quoting *G.H. v. Tamayo*, 339 F.R.D. 584, 591 (N.D. Fla. 2021)). Indeed, "some courts have gone so far as to say that the rule's requirements are almost automatically satisfied in actions primarily seeking injunctive relief." *Braggs*, 317 F.R.D. at 667 (quoting *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (internal quotation marks omitted)). "The critical inquiry is whether the class members have suffered a common injury that may properly be addressed by class-wide injunctive or equitable relief." *Ibrahim*, 326 F.R.D. at 701 (citing *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983)); *see also Wal-Mart Stores, Inc.*, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"); *H.C.R.*, 825 F. Supp. 3d at 1289 (finding that Plaintiffs suffered and were threatened with the loss of their First

Amendment rights due to substantially restricted access to counsel at the facility, which was an actual injury that was fairly traceable to the defendants' conduct and likely to be remedied by a favorable court ruling).

Rule 23(b)(2) is met. Defendants operate the Miramar Facility through common policies, practices, and omissions. Those choices govern every person held there. Plaintiffs seek facility-wide declarations and an injunction requiring performance of legally required hold-room duties; adequate capacity and sleeping arrangements; continuous potable water and nutritionally adequate meals; safe temperatures and ventilation; showers and hygiene supplies; toilet privacy; prompt medical screening, medication access, treatment, and emergency response; confidential legal calls and visitation; accurate detainee locator information; written protocols; meaningful translation, explanation, review, and confidential consultation before any immigration-related document or waiver is signed, without coercion or undue pressure; notice of rights in a language each person understands; monitoring; and nonretaliation.

Courts have repeatedly certified classes of detained immigrants challenging systemic barriers to legal access under Rule 23(b)(2), even where individual circumstances vary. *See H.C.R.*, 825 F. Supp. 3d at 1290 (provisionally certifying a class due to lack of access to counsel as: All persons who are currently, or in the future, held at the Alligator Alcatraz detention facility.). *Padilla v. U.S. Immigr. & Customs Enf't,* No. 2:18-cv-00928-MJP, ECF No. 102 (W.D. Wash. Mar. 6, 2019) (certifying two classes of detained asylum seekers challenging systemic delays in credible fear interviews and bond hearings; court emphasized uniformity of harm and relief sought);[3] *Lyon v. U.S. Immigration & Customs Enf't*, 300 F.R.D. 628, 642–43 (N.D. Cal. 2014) (certifying class of immigrant detainees seeking improved access to counsel), *modified*, 2015 WL 4538047 (N.D. Cal. July 27, 2015) (expanding class); *Barco Mercado*, 800 F. Supp. 3d at 564-65 (provisionally certifying a conditions-of-confinement class). On a developed record, the same court later certified a broader class covering detention throughout the building, including stays shorter than twelve hours. *Barco Mercado v. Mullin*, No. 25-cv-06568, slip op. at 109–18, 120 (S.D.N.Y. Sept. 24, 2026), ECF No. 186.

[3] Unrelated to the order granting class certification, the Supreme Court later vacated a preliminary injunction entered in the same case. *See Padilla v. U.S. Immigr. & Customs Enf't,* 379 F. Supp. 3d 1170 (W.D. Wash. 2023), *vacated by* 41 F.4th 1194, 1195 (9th Cir. 2022).

Certification under Rule 23(b)(2) is also appropriate here because "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 3600. Here, a single order governing those systems would benefit every current and future class member. The possibility that implementation may require individual medical or logistical decisions does not alter the indivisible character of an injunction directed to the existence and operation of the common systems themselves. No individualized monetary relief is sought. *See Braggs*, 317 F.R.D. at 6677; *Holmes*, 706 F.2d at 11555; *Barco Mercado*, ECF No. 96 at 52-53. Rule 23(b)(2) is satisfied.

## IV. Alternatively, Certification Is Appropriate Under Fed. R. Civ. P. 23(b)(1)(A)).

Alternatively, Rule 23(b)(1)(A) permits certification where separate adjudications risk imposing incompatible standards of conduct. Because the challenged physical arrangements and operating systems serve a single facility, separate injunctions prescribing mutually incompatible requirements for those same arrangements and systems could prevent Defendants from complying with all orders. *See Moreno Gonzalez*, ECF No. 87 at 12. Plaintiffs rely on this risk of incompatible affirmative obligations, rather than merely the possibility of different merits outcomes. *See* Fed. R. Civ. P. 23(b)(1)(A).

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court certify the following Class under Rules 23(a) and 23(b)(2):

> **All persons who are now detained, or will in the future be detained, in civil immigration custody at the Miramar Facility located at 2805 SW 145th Avenue, Miramar, Florida 33027.**

Plaintiffs also request appointment of Orlando Rosales Salmeron and John Doe as Class Representatives and undersigned counsel as Class Counsel under Rule 23(g).

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiffs respectfully request that the Court set a hearing on Plaintiffs' Motion for Class Certification. Plaintiffs respectfully request one hour for the hearing. A hearing would assist the Court in addressing the requirements for class certification

under Federal Rule of Civil Procedure 23 and the proposed class definition, class representatives, and appointment of class counsel.

Date: October 6, 2026

Respectfully submitted,

*/s/ Paul R. Chavez*
**Paul R. Chavez** (FL Bar No. 1021395)
pchavez@aijustice.org
**Jennifer Smith** (FL Bar No. 964514)
jsmith@aijustice.org
AMERICANS FOR IMMIGRANT JUSTICE
P.O. Box No 520037
2200 NW 72nd Ave.
Miami, FL 33152
Phone: 305-573-1106

*Attorneys for Plaintiffs*

*/s/ Anne Janet Hernandez Anderson*
**Anne Janet Hernandez Anderson** (FL Bar No. 18092)
annejanet.hernandez@splcenter.org
**Maite Garcia** (FL Bar No. 99770)
maite.garcia@splcenter.org
**Andrew Udelsman** (FL Bar No. 1051696)
andrew.udelsman@splcenter.org
**Courtney O'Donnell***
courtney.odonnell@splcenter.org
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd., Suite 3200
Miami, FL 33130
Phone: 305-537-0589

*Attorneys for Plaintiffs*

**Pro hac vice forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will serve all counsel of record.

*/s/ Paul R. Chavez*
Paul R. Chavez