**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ORLANDO ROSALES SALMERON, et al.,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security, et al.,

Defendants.

**Case No: 1:26-cv-26911-BB**
**Judge Bloom**

## PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

Plaintiffs respectfully request that the Court authorize limited, expedited discovery under Federal Rule of Civil Procedure 26(d)(1) and shorten the applicable response periods under Rules 33(b)(2) and 34(b)(2)(A). The requested discovery will develop the record for adjudicating Plaintiffs' pending motion for a preliminary injunction. The proposed discovery is set forth in Exhibit 1. In support of this motion, Plaintiffs state as follows:

## BACKGROUND

This case concerns what happens behind the doors of a building that the U.S. Department of Homeland Security ("DHS") says is not a detention facility. U.S. Immigration and Customs Enforcement ("ICE") publicly lists 2805 SW 145th Avenue in Miramar as a check-in and bond-acceptance office. Compl. ¶¶ 5, 63–65. Yet ICE personnel told a Member of Congress on July 2, 2026, that roughly 150 people were then held in four hold rooms, that each received about one bottle of water a day, that the site had no space for attorney visits, and that medical emergencies occurred roughly every day or every other day. *Id.* ¶¶ 8, 82, 101, 108. Whistleblowers later reported 342 people held on a single day in a space with a capacity of 56. *Id.* ¶ 1. Miramar Fire Rescue

logged 194 emergency medical calls to the site in one year, 49 in June 2026 alone. *Id.* ¶ 103. And when public reporting surfaced images of people sleeping on the floor, DHS answered that "[b]eing in detention is a choice," and encouraged detained people to voluntarily self-deport. *Id.* ¶ 125.

Plaintiffs challenge three interconnected practices at the Miramar Facility: punitive conditions of civil confinement (Count I); obstruction of access to counsel (Count II); and the use of those conditions, and of isolation from counsel, to obtain signatures on voluntary-departure and other removal-related documents (Count III), along with Defendants' failure to perform discrete duties imposed by ICE Directive 11087.2 (Count IV). Defendants possess operational records and information essential to resolving the pending preliminary-injunction motion, including how many people they hold and for how long, the dimensions of the rooms, what Directive-mandated logs show, how detained people can (or cannot) reach a lawyer, and what forms officers put in front of detained people and in what language. The challenged restrictions on access to counsel also impede Plaintiffs' counsel's ability to gather evidence of current conditions.

Plaintiffs seek focused discovery of the kind courts have ordered in challenges to immigration detention conditions and restrictions on access to counsel, including in this District. *See C.M. v. Noem*, No. 1:25-cv-23182-RAR, 2025 WL 3544224 (S.D. Fla. Aug. 4, 2025) (granting expedited discovery in part). The requests in Exhibit 1 target factual issues relevant to preliminary relief and the formulation of an effective order. Their limited scope, the alleged restrictions on access to the Miramar Facility, and the need for current operational information establish good cause for expedition.

## LEGAL STANDARD

A party ordinarily may not seek discovery before the Rule 26(f) conference except as authorized by the Federal Rules, stipulation, or court order. Fed. R. Civ. P. 26(d)(1). The advisory committee expressly contemplated early discovery in cases involving requests for a preliminary injunction. Fed. R. Civ. P. 26(d) advisory committee's note to 1993 amendment. A district court may order expedited discovery upon a showing of good cause. *Foundever Operating Corp. v. Hahn*, No. 8:23-cv-1495, 2023 WL 6496065, at *2 (M.D. Fla. Sept. 5, 2023); *TracFone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015). The Court may shorten the response periods for interrogatories and requests for production or inspection. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). The requested discovery must also be relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Courts assess good cause in light of the scope, purpose, timing, and burden of the requested discovery. In *C.M. v. Noem*, the court identified the governing factors: "(1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made." 2025 WL 3544224 at *2 (citing *Thyssenkrupp Elevator Corp. v. Hubbard*, No. 2:13-cv-202, 2013 WL 1953346, at *1 (M.D. Fla. May 10, 2013)). Good cause exists where the information sought has a "direct bearing on [the] motion for preliminary injunction." *Foundever,* 2023 WL 6496065, at *2; *see Bostwick Lab'ys, Inc. v. Farley*, No. 14-cv-60316, 2014 WL 12580031, at *2 (S.D. Fla. May 16, 2014). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *TracFone Wireless, Inc. v. Holden Prop. Servs., LLC*, 299 F.R.D. 692, 694 (S.D. Fla. 2014). Here, the need for the requested evidence outweighs the burden of the limited discovery proposed.

## DISCUSSION

### I. Each good-cause factor favors limited expedited discovery.

*A. A preliminary-injunction motion is pending, and the discovery goes to its core.*

Plaintiffs' motion for preliminary relief is pending. *See* ECF No. 6. The requested discovery bears directly on the merits, ongoing harm, and the scope of appropriate preliminary relief. On the likelihood of success on Count I, the question under the Fifth Amendment is whether conditions are "excessive in relation to" any legitimate, nonpunitive purpose. *See Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979). That inquiry turns on how many people Defendants hold in how much space, for how long, with what food, water, sleep surface, sanitation, and medical access. Requests for Production 2–7 and Interrogatories 2–3 seek evidence addressing those questions with Defendants' own records. On Count II, Requests for Production 1 and 8 and Interrogatory 4 show what means of attorney contact exist, if any. On Count III, Requests for Production 9–10 and Interrogatory 5 show what forms are presented, in what languages, how often, and under what procedures. On Count IV, the logs required by Directive § 5.8, together with the requested policies and testimony, will help establish whether Defendants comply with the Directive's applicable requirements, including meal intervals, access to water, and the twelve-hour framework.

Just as important, this discovery is needed to frame relief. The Complaint asks the Court to set occupancy limits based on usable square footage, toilet access, and the ability to lie down; to require sleeping surfaces, water, meals at six-hour intervals, and medical screening; to require confidential legal calls; and to impose safeguards on the presentation of removal documents. Room dimensions and design capacity will assist the Court in evaluating occupancy limits, and information about telephone infrastructure will assist it in assessing a workable legal-call protocol. This is exactly the ground on which the court found good cause in *C.M. v. Noem:* the discovery

was "directly relevant to the court's ability to formulate an effective, appropriate order" on preliminary relief. 2025 WL 3544224, at *2.

*B. The reasons for expedition are compelling.*

Three features of this case make ordinary sequencing unworkable. First, the challenged practice is itself the obstacle: Defendants bar legal visits and confidential calls, so Plaintiffs' counsel cannot gather evidence through ordinary channels. The court in *Doe v. Johnson* granted expedited discovery to detained people in a DHS hold-room conditions case on exactly this basis, finding "good cause for the expedited discovery because it is needed by Plaintiffs to prepare and file a Motion for Preliminary Injunction" and that "the administration of justice outweigh[s] the prejudice to the Defendants given the narrow limits of the discovery." No. 4:15-cv-250-TUC-DCB, 2015 WL 5086291, at *1 (D. Ariz. Aug. 14, 2015). Second, transfers and turnover in the detained population can make witnesses difficult to locate. Third, Defendants publicly dispute that the Miramar Facility is a detention facility at all. Compl. ¶ 125. Contemporaneous logs, population data, video, and a court-authorized inspection will help the Court assess the actual conditions of confinement and evaluate the parties' declarations. Additionally, Assistant Field Officer Director Angel Cata's assertions of compliant, short-term confinement and adequate conditions at the Miramar Facility, together with his challenges to certain declarants' reported confinement dates and durations, underscore the need for narrowly tailored expedited discovery of the underlying detention and operational records to resolve those factual disputes and develop a fuller record for adjudicating the pending preliminary injunction motion (Cata Decl. ¶¶ 3–29, ECF No. 29-1).

Courts have authorized comparable discovery in other hold-room cases. In *Moreno Gonzalez v. Noem*, the court granted limited expedited discovery in a challenge to conditions, attorney access, and coerced voluntary-departure signatures at ICE's Broadview hold-room facility, the closest analogue to this case, and directed counsel to confer about depositions and on

"records on the amount of people being housed in the Broadview ICE facility cells." No. 1:25-cv-13323, ECF No. 45 (N.D. Ill. Nov. 4, 2025). The court then authorized a Rule 34(a)(2) inspection of the facility, with plaintiffs' expert and photographs, and permitted counsel to speak with putative class members who chose to talk. *Id.*, ECF Nos. 59, 64, 68, 73 (N.D. Ill. Nov. 7–12, 2025). In *D.N.N. v. Baker*, the court authorized up to fifteen document requests, fifteen interrogatories, and one deposition concerning conditions in ICE's Baltimore hold rooms, including medical care, food and water, hygiene, sleeping supplies, population, and detention duration. No. 1:25-cv-01613-JRR, ECF No. 81 at 1–2 (D. Md. Aug. 7, 2025). In *Barco Mercado v. Noem*, the court upheld expedited discovery in support of a contempt motion, reasoning that restricted access and transfers left the plaintiff with few means of obtaining evidence about hold-room conditions without discovery. No. 1:25-cv-06568-LAK, ECF No. 129 at 4–6 (S.D.N.Y. Dec. 12, 2025). Those evidentiary barriers are comparable to the barriers here. *See also Malam v. Adducci*, No. 20-10829, 2020 WL 12738917, at *2 (E.D. Mich. Apr. 30, 2020) (ordering expedited discovery from ICE where requests were "reasonably targeted and clear so that the burden on Defendants will be minimal"); *Ache v. Witte*, No. 6:20-cv-01320, 2020 WL 7393895, at *2 (W.D. La. Dec. 16, 2020) (granting expedited discovery to ICE detainees).

*C. The requests are narrow.*

In *C.M. v. Noem,* the court compelled the requests tied to the preliminary injunction ruling and declined those that were "broader than necessary for the Court to adjudicate" it. 2025 WL 3544224, at *2. Similarly here, every request is limited to one facility. Data requests generally run from June 1, 2026 forward. The single communications request is limited to four custodians and search terms to be agreed upon by the parties. The video request is confined to three windows of seventy-two hours or less: the two congressional visits and the days immediately after this suit was filed.

*D. The requested discovery is proportionate and limits the burden of compliance.*

Most of the requested discovery concern records Defendants are already required to keep. Directive 11087.2 mandates a detention log for each person recording time in, mealtimes, time out, language, and vulnerability, and a hold-room inspection log every twelve hours. Directive § 5.8. Directive 11087.2 also mandates annual compliance assessments. *Id.* §§ 2.6, 4.3. Population and length-of-stay data reside in ICE's case-management systems and can be exported. Like in *Malam,* this is information of "the kind that prison facilities typically collect." *Malam*, 2020 WL 12738917, at *2. Thus, there is no burden on Defendants. An inspection requires Defendants only to open doors they open for congressional visitors, as they did on July 2 and September 30, 2026. The depositions are capped at seven hours combined, half the presumptive limit for a single witness. Fed. R. Civ. P. 30(d)(1). If Defendants cannot readily produce the records the Directive already requires them to keep, that fact is itself highly probative of Count IV, violation of the Administration Procedure Act. Lastly, where, as here, expedited discovery is necessary to develop the evidentiary record for a pending motion for preliminary relief, the need to depart from the ordinary discovery schedule is not a defect in the request; it is the very reason expedited discovery is warranted. Plaintiffs seek only what is needed for the preliminary-injunction hearing; all other discovery will proceed in the ordinary course after the Rule 26(f) conference.

**II. A site inspection is necessary, and written discovery alone will not suffice.**

Rule 34(a)(2) permits entry onto property within a party's possession or control to "inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Conditions of confinement cases are paradigmatically suited to inspection. Whether a room permits seventy people to lie down, whether a toilet is screened, whether cameras capture it, how hot the room becomes when full, and whether a telephone sits within earshot of officers are facts best established by seeing them. The record already illustrates that the conditions described by

officials do not match reports from detained people. Officials told Rep. Wasserman Schultz that water was available "on demand," that showers were available every other day, and that menstrual supplies were stocked, while the supply cupboard was empty and detainees described going days or weeks without a shower. Compl. ¶¶ 85, 89–90. Plaintiffs propose safeguards comparable to the agreed procedures approved in *Moreno Gonzalez*: a limited team, attorneys' eyes-only treatment of photographs pending review and conferral concerning any necessary redactions, and voluntary conversations with putative class members. *See Moreno Gonzalez*, ECF No. 68 (N.D. Ill. Nov. 12, 2025), Ex. 2. Plaintiffs will comply with reasonable security instructions. Plaintiffs request permission to conduct an inspection on twenty-four hours' notice, including an evening visit, to document the overnight conditions alleged in the Complaint while allowing reasonable security coordination.

**III. Two limited depositions are warranted.**

Plaintiffs seek a four-hour Rule 30(b)(6) deposition on six enumerated topics and a three-hour deposition of the supervisory officer responsible for day-to-day operation of the Miramar Facility. Plaintiffs do not, at this stage, seek to depose any named Defendant or senior official. One or more designees can explain the data, logs, and policies, how the facility is classified and staffed, and the procedures for presenting removal documents. The officer in charge can testify to occupancy, the actual water, meal, shower, and medical practices, and the absence of anti-coercion safeguards described at the July 2 visit. *See Moreno Gonzalez*, ECF No. 45 (directing the parties to confer on depositions). Without this testimony, the Court will be left with dueling declarations on facts that a single witness with personal knowledge could resolve.

**IV. The Court should order preservation now.**

Plaintiffs request a preservation order directed to evidence relevant to the challenged conditions and practices. Defendants should preserve materials responsive to Exhibit 1 and the

relevant categories identified in the Complaint's Prayer for Relief ¶ 8, including existing surveillance footage depicting the designated periods and areas. Plaintiffs also request suspension of routine overwriting of footage from cameras covering hold rooms and other areas used to confine detainees, from entry of the order through the preliminary-injunction hearing, unless the Court orders otherwise. This targeted relief will protect potentially irreplaceable evidence while allowing Defendants to seek modification upon a specific showing of undue burden. See Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (addressing reasonable steps to preserve electronically stored information).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and enter the proposed order attached as Exhibit 2: (1) authorizing service of the discovery in Exhibit 1 before the Rule 26(f) conference, requiring Defendants to serve responses and objections and produce nonprivileged responsive documents within seven days after service of the authorized requests, and requiring weekly updates to population data through the preliminary-injunction hearing; (2) permitting an inspection under Rule 34(a)(2) on the terms set forth in Exhibit 1; (3) requiring ICE to designate one or more representatives for a Rule 30(b)(6) deposition capped at four hours in total and requiring the supervisory officer responsible for the Miramar Facility to appear for a three-hour deposition, on dates specified in the order following the initial production; (4) authorizing disclosure of responsive records under 5 U.S.C. § 552a(b)(12), to the extent necessary, subject to an interim protective order restricting use and disclosure; and (5) requiring preservation of responsive materials and surveillance footage as specified above. Plaintiffs further request that the order expressly shorten the applicable written discovery response and deposition-notice periods to implement this schedule.

## CERTIFICATE OF CONFERRAL

Plaintiffs' counsel certifies that on November 6, 2026, Plaintiffs' counsel conferred with defense counsel by telephone regarding the relief requested in Plaintiffs' Motion for Expedited Discovery. Defendants oppose the motion.

Date: November 6, 2026

Respectfully submitted,

/s/ **Paul R. Chavez** (FL Bar No. 1021395)
pchavez@aijustice.org
**Jennifer Smith** (FL Bar No. 964514)
jsmith@aijustice.org
AMERICANS FOR IMMIGRANT JUSTICE
P.O. Box No 520037 2200 NW 72nd Ave.
Miami, FL 33152
Phone: 305-573-1106
Attorneys for Plaintiffs

/s/ **Anne Janet Anderson** (FL Bar No. 18092)
annejanet.hernandez@splcenter.org
**Maite Garcia** (FL Bar No. 99770)
maite.garcia@splcenter.org
**Andrew Udelsman** (FL Bar No. 1051696)
andrew.udelsman@splcenter.org
**Jeanette Ynfante**
jeanette.ynfante@splcenter.org
**Courtney O'Donnell**
courtney.odonnell@splcenter.org
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037 Miami, FL 33137
Phone: 305-537-0589
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on November 6, 2026, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system. I further certify that a true and correct copy of the foregoing will be timely emailed to Keyla Rodriguez, Esq., Keyla.Rodriguez@usdoj.gov, the attorney whom Defendants have indicated is representing them in this case.

/s/ Paul R. Chavez
Paul R. Chavez