**Declaration of Bryan Jose Villalobos Corea**

I, Bryan Jose Villalobos Corea, declare as follows:

1. I am over the age of eighteen and competent to make this declaration. I have personal knowledge of the facts stated in it, and if called as a witness, I could and would testify to them.
2. I am submitting this declaration to describe the conditions I experienced while detained at the Miramar immigration facility in Miramar, Florida.
3. I do not recall the exact dates of my detention, but I remember spending six nights at the Miramar facility. I believe I arrived on or about October 19 or 20, 2026, and remained there until approximately October 25 or 26, 2026.
4. When I first arrived at Miramar, there were approximately 30 people in the holding room where I was placed. The next day, as more people arrived, the room became increasingly crowded, and there were always at least 40–50 people.
5. The room was very small. Based on the size, I believe it had enough space for approximately 10 people, but there were as many as 50 people being held there. The room was overcrowded throughout my detention.
6. There was not enough space for everyone to lie down and sleep. People had to sleep extremely close to one another, and some people ended up sleeping on top of each other because there was simply nowhere else to go.
7. Some people had no choice but to sleep right next to the toilet. They had to lean against or beside the toilet because there was no other available space on the floor.
8. We were not provided with beds or mattresses. Instead, I was given a thin foam mat, approximately half an inch thick, which I placed directly on the floor to sleep. Sleeping was extremely uncomfortable because the mat was so thin that I could still feel the hard concrete floor beneath me. The overcrowding and conditions in the room made it even more difficult to sleep.
9. The room was dirty. It was dusty, and the floor was wet in places with what appeared to be water and urine. The room had a terrible, disgusting smell.
10. There was only one toilet for approximately 40 to 50 men. The toilet was inside the room and was completely exposed. There was no wall, curtain, or other covering to provide privacy. Whenever I used the toilet, the other men in the room could see me.

11. Using the toilet was extremely uncomfortable because of the lack of privacy, the number of people sharing it, and the filthy conditions surrounding it. We had toilet paper, but the bathroom conditions were humiliating.

12. We were not provided with soap to wash ourselves. We were given a toothbrush and toothpaste, but we did not have access to the basic hygiene supplies needed to keep ourselves clean.

13. During the approximately six days I was detained at Miramar, I was allowed to shower only once. After showing, I had to put on the same clothes I had been wearing since I arrived because I was not provided with a change of clothing.

14. The other men and I repeatedly begged the officers to allow us to shower. We told them that we could not stand being so dirty and that we smelled bad. It was only after repeatedly asking the officers that I was finally allowed to shower that one time.

15. I met other men in the room who told me they had been detained at Miramar for nine days without being allowed to shower.

16. The holding room was also extremely hot. At times, the heat was so unbearable that we pleaded with the officers to leave the door open and keep a fan running because we could not stand the heat.

17. The lights in the holding room always remained on, including throughout the night. They were very bright and made it difficult for us to sleep.

18. I asked an officer if the lights could be turned off or at least dimmed so that we could sleep. The officer told me that they could not turn them off.

19. Between the constant bright lights, the overcrowding, the uncomfortable floor, and the noise from other people talking, it was very difficult to get any meaningful rest.

20. Before I was detained, I normally slept approximately eight hours each night. At Miramar, I was only able to sleep approximately four hours, and even that sleep was interrupted and uncomfortable.

21. The food we received was bad. For the first three days I was at Miramar, we were given bread with peanut butter and jelly for breakfast, lunch, and dinner. We were served essentially the same thing at every meal.

22. By the fourth day, I could no longer tolerate eating the same food. So the other men and I began protesting and refused to accept the food because we could not continue eating peanut butter and jelly sandwiches for every meal.

23. After we protested, the officers began giving us a small serving of soup with beef for lunch. However, the portions were very small, and we continued receiving peanut butter and jelly sandwiches for breakfast and dinner for the remainder of my time at Miramar.

24. Eating peanut butter and jelly sandwiches repeatedly also made me feel physically uncomfortable. I had difficulty having bowel movements, which made the lack of privacy around the toilet even more distressing.

25. We were given one bottle of water with each meal. When we ran out of bottled water, the officers told us to drink water from the sink near the toilet.

26. I did not want to drink the water from that sink because it appeared cloudy and tasted bad. I was concerned about drinking it because the sink was located near the toilet.

27. I frequently felt thirsty and dehydrated. I also experienced hunger because the food portions were very small and inadequate.

28. While detained at Miramar, I was generally permitted one telephone call per day. The calls were limited to approximately five minutes, and sometimes they were even shorter. We were not allowed to receive any visitors.

29. While I was detained at Miramar, I saw officers asking detained individuals whether they wanted to sign documents agreeing to return to their home countries. I observed many people signing these documents. I believe some agreed to sign because they were desperate to leave Miramar and escape the terrible conditions in which we were being held.

30. Officers also asked me whether I wanted to sign documents agreeing to leave the United States, but I refused.

31. I felt anxious and desperate throughout my detention at Miramar. There was no way to feel calm or at peace in those conditions. Each day, I had to endure the same overcrowding, heat, lack of sleep, inadequate food, and inability to keep myself clean.

32. I also felt deeply humiliated by the way we were treated. I felt as though we were being treated like garbage rather than human beings. Even dogs are treated better.

33. No human being should have to endure this treatment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Because I do not speak English fluently, an attorney, Jeanette Ynfante, read this declaration to me in Spanish over the telephone on November 9, 2026 including the statement concerning penalties of perjury. Spanish is a language I fully understand. I had the opportunity to ask questions and make corrections. I understood the declaration as translated and confirmed that its contents are true and correct.

I am currently detained in Denver, Colorado. Because of substantial delays in sending and receiving mail at this facility, I expressly authorized Ms. Ynfante to affix my /s/ electronic signature and file this declaration on my behalf. I gave this authorization after the entire declaration was read to me and I confirmed its accuracy, intending to adopt that signature as my own and to make this declaration under penalty of perjury. If required, I will provide a declaration bearing my handwritten signature.

Date: November 9, 2026

/s/ *Bryan Jose Villalobos Corea*
**Bryan Jose Villalobos Corea**

**CERTIFICATION**

I, Jeanette Ynfante, declare that I am proficient in the English and Spanish languages. On November 9, 2026, I read the foregoing declaration and translated it faithfully and accurately into Spanish over a telephone call with the declarant. After I completed translating the declaration, the declarant confirmed that the contents of the foregoing declaration are true and accurate, and authorized me to affix his /s/ signature.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 9, 2026

/s/ *Jeanette Ynfante*
**Jeanette Ynfante**