**Declaration of Gleiber Roa Castaneda**

I, Gleiber Roa Castaneda, hereby declare as follows:

1. I am over eighteen years of age and competent to make this declaration. I have personal knowledge of the facts stated below, and if called as a witness, I could and would testify to them.

2. I submit this declaration to describe the conditions I experienced while detained at the Miramar facility in Miramar, Florida.

3. I was detained by ICE while driving my wife to work in the Weston area. My wife was also detained. At the time, I had a valid work permit and a valid Florida license, so did she. Nevertheless, my wife and I were both taken to the Miramar facility.

4. I was held at Miramar for approximately four days. I believe this was around October 19 through October 22, 2026, although I do not remember the exact dates.

5. There were approximately 25 to 28 people in the room where I was held. The room was small, and based on its size, I believe it had enough space for only approximately 12 to 15 people. We were overcrowded and forced to remain very close to one another.

6. When I arrived at Miramar, I was given one toothbrush and a small amount of toothpaste. The toothpaste was not enough to last the four days I was detained there. I asked for more toothpaste but never received any.

7. I was not provided with a clean blanket. Instead, I took an aluminum blanket that was in the room and used by someone who had previously been detained there.

8. While detained at Miramar, I slept on a bench with a very hard concrete surface. There were no beds or mattresses. So, I used a thin mat that was already in the room when I arrived at Miramar. The mat was approximately half an inch thick. The mat was dirty and appeared to have been used before without being washed. It provided almost no cushioning, and I could still feel the hard concrete surface of the bench underneath me. It was very uncomfortable to sleep on.

9. I was able to sleep on the bench throughout my detention because I got that space when I arrived after one of the men using left. However, the other men in the room had to sleep on the floor using their thin mats. Because of the overcrowding, they slept very close to one another. Some men slept near the toilets, while others slept on top of the sinks.

10. The lights in the room remained on and bright at all times, including throughout

the night. I estimate that I slept approximately four hours per day while detained at Miramar. It was difficult to sleep any longer because of the overcrowding, the constant lighting, and the lack of adequate sleeping space and bedding.

11. There were two toilets and two sinks in the same room where we slept. One of the toilets was frequently clogged and did not function properly. Both toilets were exposed. Although each toilet had a partial wall on one side, these walls did not provide adequate coverage or privacy.

12. I used the toilet twice during my detention. Because there was no privacy, I had to use the aluminum blanket that I used for sleeping to try to cover myself while using the toilet. One of the other men in the room was so uncomfortable with the lack of privacy that he could not have a bowel movement.

13. The room was dirty and smelled bad. During the four days I was detained there, I never saw anyone clean the room or the toilets. We were not provided with cleaning supplies to clean the room or toilets ourselves. The officers provided toilet paper for our personal use, but nothing to clean the toilets or the room.

14. I was not allowed to shower during the four days I was held at Miramar. I also had to wear the same clothes I had been wearing when I arrived throughout my detention.

15. The food tasted bad, and the portions were small. During the four days I was detained there, I was served essentially the same food for breakfast, lunch, and dinner. The meals generally consisted of potatoes, bread with a packet of peanut butter and jelly, a cheese sandwich, and an apple. On one occasion, I was also given soup. I received some variation of these same foods at every meal throughout my detention. I was given two bottles of water per day.

16. I was generally able to make telephone calls once or twice a day. The calls were limited to approximately five to ten minutes.

17. I did not receive any medical screening when I arrived at Miramar.

18. While we were detained at Miramar, ICE officers pressured my wife and me to sign documents agreeing to be deported to our country. We were frightened, and the officers told us that if we signed the documents, we would be released from detention more quickly. They also told us that if we did not want to continue suffering through detention or wait for a longer process, we should sign the

documents.

19. My wife and I signed the deportation documents on the first day we arrived at Miramar. The documents were not in Spanish, and neither my wife nor I speak English. The officers did not translate the documents or explain their contents to us. They also did not inform us that we could speak with an attorney before signing.

20. The officers also told me that if I had a passport, I could purchase my own plane ticket to travel to another country and that it did not necessarily have to be my country of birth.

21. My wife and I signed the documents because we were afraid and because the officers told us that signing would allow us to leave detention more quickly. However, despite signing the documents, I remain detained to this day. What the officers told me about the process moving more quickly did not turn out to be true.

22. The conditions at Miramar caused me physical and emotional discomfort. I felt that the treatment we received was inhumane.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Because I do not speak English fluently, an attorney, Jeanette Ynfante, read this declaration to me in Spanish over the telephone on November 12, 2026 including the statement concerning penalties of perjury. Spanish is a language I fully understand. I had the opportunity to ask questions and make corrections. I understood the declaration as translated and confirmed that its contents are true and correct.

I am currently detained in Brooklyn, New York. Because of substantial delays in sending and receiving mail at this facility, I expressly authorized Ms. Ynfante to affix my /s/ electronic signature and file this declaration on my behalf. I gave this authorization after the entire declaration was read to me and I confirmed its accuracy, intending to adopt that signature as my own and to make this declaration under penalty of perjury. If required, I will provide a declaration bearing my handwritten signature.

Date: November 12, 2026

/s/ *Gleiber Roa Castaneda*
**Gleiber Roa Castaneda**