**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ORLANDO ROSALES SALMERON, et. al.,

*Plaintiffs*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security, et. al.,

*Defendants*.

Civil Action No. 1:26-cv-26911-BB

Judge Beth Bloom

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT**

Defendants, by and through their undersigned counsel, file their Response in Opposition to Petitioners' Motion for Class Certification and Memorandum of Law in Support (ECF No. 9), and state as follows:

## I. INTRODUCTION

There are two named Plaintiffs in this case. The first is Orlando Rosales Salmeron, whose biography is laid out in detail in Plaintiffs' complaint. (ECF No. 1), at 27-36. Salmeron is alleged to have been detained at Miramar "for multiple days." The second is John Doe, who is described in Plaintiffs' complaint. (ECF No. 1), at 37-38, who also was allegedly processed at Miramar. Plaintiffs allege four claims for relief: (1) violation of the Fifth Amendment Due Process Clause (ECF No. 1, at 38-40); (2) violation of the First and Fifth Amendments; 8 U.S.C. §§ 1362, 1229a(b)(4)(A) (ECF No. 9, at 40-41); (3) violation of Fifth Amendment Due Process Clause and

the Administrative Procedure Act, 5 U.S.C. §§ 704(2)(A)-(B); and (4) Violation of the Administrative Procedure Act, 5 U.S.C. § 706 (ECF No. 9, 44-46).

Miramar contains an ICE field office processing and holding facility with rooms designed to temporarily hold individuals during arrest processing and while awaiting transportation to detention facilities. The field office processing area has four holding rooms.

Miramar does not have access to medical personnel assigned to the field office, however detainees may receive their medications, are permitted to change clothes (and are issued a change of clothes upon request), and are provided meals, bottled water, blankets, and beddings mats.

## II. PROCEDURAL HISTORY

Plaintiffs filed with the Court their Class Action Complaint for Declaratory and Injunctive Relief on October 2, 2026. (ECF No. 1). Soon thereafter, on October 5, 2026, the Plaintiffs followed the filing with an Expedited Motion for a Temporary Restraining Order and Preliminary Injunction. (ECF No. 6).

The following day, they filed the Motion for Class Citification and Memorandum of Law in Support. (ECF No. 9). Plaintiffs allege that class certification is proper because Defendants policies and practices apply generally to the proposed Class (ECF No. 9). Plaintiffs seek to certify a class that encompasses all person who are now detained or will be detained in the future in civil immigration custody at the Miramar Facility located at 2805 SW 145th Avenue, Miramar, Florida 33027.

On October 20, 2026, the Court issued a paperless order denying the request for a Temporary Restraining Order as the Expedited Motion sought relief that extends beyond preserving the status quo. *See* (ECF No. 20) (stating that the Preliminary Injunction would be held in abeyance until a hearing would be held upon Plaintiffs' request); *see also Schiavo ex rel.*

*Schiavo*, 403 F.3d 1289, 1297 (11th Cir. 2005)("A temporary restraining order protects against irreparable harm and preserves the status quo until a meaningful decision on the merits can be made.").

Plaintiffs filed two motions in between, for a Plaintiff and declarant to proceed via pseudonym (ECF Nos. 18; 19); however, the Court denied both requests to proceed via pseudonym (ECF No. 46). In the Court's Omnibus Order Denying Motions to Proceed Under Pseudonym, the Court found that both John and Jane Doe failed to demonstrate the right to privacy overcomes the presumption of judicial openness, without any legitimate interest in keeping the information confidential. See ECF No. 46 at 5-6.

Amongst the most recent filings, Plaintiffs submitted a Motion for Entry of Protective Order (ECF No. 36), and a Motion for Expedited Discovery (ECF No. 32). To which the Defendants responded on Friday, November 16, 2026, in opposition of both motions. *See* ECF Nos. 42; 43. The Court did not deny the protective order, however, it graciously adopted the proposed order entered by Defendants in good faith. *See* ECF No. 45.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) sets out four requirements for class certification. Those requirements are: (1) the class is so numerous that joinder is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a).

The Supreme Court has emphasized that "Rule 23 does not set forth a mere pleading standard" and, thus, Plaintiffs "must affirmatively demonstrate compliance with the Rule – that is

[they] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.*, at 350. Consequently, the Court must conduct a "rigorous" class certification analysis, which may "entail some overlap with the merits of the [plaintiffs] underlying claim." *Id.*, at 351. If the Court is not fully satisfied that all Rule 23 requirements are met, the Court cannot certify the class. *Id.* Further, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*, citing *Falcon*, 457 U.S. at 160.

The Supreme Court has held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). The party seeking class certification bears the burden of demonstrating it has satisfied all four Rule 23(a) prerequisites and that the class lawsuit falls within one of the three types of actions permitted under Rule 23(b). *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997). In this case, Plaintiffs seek certification under subsection (b)(2) of Rule 23, which permits class certification "because separate injunctions prescribing mutually incompatible requires for the [facility] could prevent the Defendants from complying with the orders." *See* (ECF No. 9), at 20. "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To fall within the exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The party seeking class certification has the burden of proof such that "[a]ll else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).

Defendants agree that the "inherently transitory" exception to the mootness doctrine might apply to some individuals who are processed through Miramar for purposes of class certification, although it is difficult to ascertain this with certainty with respect to John Doe because Defendants do not know who he is.

Defendants also agree that the numerosity requirement of 23(a) is satisfied. Miramar is processing dozens or hundreds of aliens weekly who may be transferred to detention facilities or are deported, making joinder impractical or impossible.

Defendants disagree, however, that there are questions of law or fact common to the class ("commonality"); the claims or defenses of the named plaintiffs are typical of claims or defenses of the class ("typicality"); the named plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). Neither do the execution of policies at Miramar satisfy create conditions that make class relief under 23(b)(2) or 23(b)(1)(A) appropriate.

## IV. DEFENDANTS' MOTION TO STRIKE OR DISREGARD PSEUDONYM DECLARATIONS, WHISTLEBLOWER ALLEGATIONS, AND CONGRESSIONAL LETTERS, AND TO DENY CLASS CERTIFICATION

Defendants respectfully request that the Court strike or disregard the following materials for purposes of class certification, and that it deny the motion for class certification because Plaintiffs' reliance on these materials is inextricably incorporated into their showing under Rule 23.

**A. John Doe Plaintiff and John Doe / Jane Doe Declarants**

The Court has denied the motions for leave to proceed under pseudonym (ECF No. 46). Despite that ruling, Plaintiffs continue to rely on a named "John Doe" plaintiff and on declarations submitted by "John Doe," "John Doe 2," and "Jane Doe." Those filings were premised on the expectation that anonymity would be permitted. With that request denied, the pseudonymous plaintiff and declarations may not properly remain in the record. *See* Fed. R. Civ. P. 10(a); Fed. R. Civ. P. 11. Courts routinely strike or disregard filings that continue to use pseudonyms after leave to proceed anonymously has been denied. *See, e.g., Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir. 1992). Plaintiffs have not identified these individuals or sought leave to re-file under their true names. The Court should therefore strike the John Doe plaintiff designation and the John Doe, John Doe 2, and Jane Doe declarations.

**B. Whistleblower Allegations**

Plaintiffs rely on unsworn and anonymous "whistleblower" allegations (including the letter attached as an exhibit to the complaint and referenced in the class certification). These materials are hearsay, lack foundation, and have not been subjected to cross-examination or any reliability showing. *See* Fed. R. Evid. 801, 802, 602. It is not competent evidence for purposes of the rigorous analysis required under Rule 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). The Court should strike or disregard the whistleblower allegations.

**C. Congressional Letters**

Plaintiffs cite various congressional letters and correspondence as purported evidence of conditions at Miramar. *See generally* (ECF No. 1). These documents are unsworn, out-of-court statements offered for the truth of the matters asserted. They constitute hearsay, lack personal

knowledge, are not subject to cross-examination, and lack the reliability required for use in a rigorous Rule 23 analysis. *See* Fed. R. Evid. 801, 802, 602; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). The Court should strike or disregard these materials.

**D. The Motion for Class Certification Should Be Denied Because It Inextricably Relies on These Materials**

Plaintiffs' motion for class certification is inextricably bound up with the materials identified above. The motion and its supporting memorandum repeatedly cite the pseudonymous plaintiff and declarants, the whistleblower allegations, and the congressional letters as evidence of numerosity, commonality, typicality, and the existence of a facility-wide practice. Because those materials are not properly before the Court as competent evidence, the factual predicate on which Plaintiffs rest their Rule 23 showing collapses. A party seeking class certification bears the burden of affirmatively demonstrating compliance with Rule 23 through competent evidence. *Dukes*, 564 U.S. at 350–51. When the evidence on which that showing depends is stricken or disregarded, the motion fails. The Court should therefore deny the motion for class certification.

For these reasons, Defendants request that the Court strike the pseudonymous plaintiff and declarations, the whistleblower allegations, and the congressional letters, and that it deny Plaintiffs' motion for class certification.

## V. THE PROPOSED CLASS IS NOT ADEQUATELY DEFINED AND CLEARLY ASCERTAINABLE

Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is "adequately defined and clearly ascertainable." *See Little v. T-Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012); *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970) (precedential under *Bonner v. City of*

*Prichard, Ala.*, 661 F. 2d 1206, 1207 (11th Cir. 1981))[1]; *cf. John v. Nat'l Sec. Fire & Cas. Co.,* 501 F.3d 443, 445 (5th Cir.2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). A class is defined too broadly to permit certification, "[i]f a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824-25 (7th Cir. 2012); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of certification of class defined so broadly that it included millions of individuals who were not deceived). The definition Plainiffs propose fails this threshold requirement.

Plaintiffs propose one class:

> All persons who are now detained, or will in the future be detained, in civil immigration custody at the Miramar Facility located at 2805 SW 145th Avenue, Miramar, Florida located at 2805 SW. (ECF No. 9, at 2)

The definition lacks any objective criteria that distinguish class members from non-members with respect to the claims actually pleaded. It turns solely on the fact of detention at Miramar. Anyone who passes through the facility, even for a brief period and without experiencing the alleged overcrowding, inadequate hygiene, medical delays, restricted access to counsel, or any of the other conditions Plaintiffs allege, would fall within the class. The definition therefore sweeps in individuals who have no live claim and is overbroad.

For example, some Miramar detainees do not want or need access to counsel, have appreciated assistance with voluntary departure, do not want or need medical care, and are satisfied with the food and water, phone access, and did not need sleeping arrangements or were satisfied with them. Others may have experienced different conditions or may hold different preferences.

A class defined solely by the fact of detention at the facility sweeps in individuals who have no grievance with the very conditions Plaintiffs allege and who would not benefit from and may be indifferent or opposed to the prospective relief sought. Because the definition does not distinguish between those who allegedly suffered the claimed harms and those who did not, it is not adequately defined and clearly ascertainable.

Compounding the problem, the named Plaintiffs and all of the declarants on whom Plaintiffs rely are no longer detained at Miramar. A class definition that the proposed representatives themselves do not currently satisfy is not adequately defined for purposes of class certification. Determining who belongs in the class would require continuous, individualized inquiries into who is (or will be) held at the facility and under what circumstances, an inquiry that renders the class un-administrable.

The definition is open-ended and future-oriented. Membership cannot be determined by objective, presently verifiable criteria. Whether a person "will in the future be detained" at Miramar depends on speculative future enforcement actions that have not occurred and may never occur. A class defined by events that have not yet taken place is not clearly ascertainable at the time of certification.

Because the proposed class is neither adequately defined nor clearly ascertainable, certification should be denied without the need to reach the remaining requirements of Rule 23(a) and (b). *See Little*, 691 F.3d at 1304.

## VI. PLAINTIFFS HAVE NOT SATISFIED THE COMMONALITY REQUIREMENT

The "commonality" requirement mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). More specifically, the putative class' "claims must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is

capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 349. Although for purposes of Rule 23(a)(2) even a single common question will do, "[w]hat matters to class certification . . . is not the raising of common questions — even in droves — but, rather the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. at 350 (citation omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2009).

Plaintiffs make specific claims regarding the adequacy of sleeping arrangement, food and water, privacy, heating and ventilation, access to counsel, and coercive voluntary departures. *See* (ECF No. 9, at 13-14). They focus on room dimensions and occupancy records; sleeping arrangements; food, water, and hygiene practices; toilet partitions and camera placement; temperature and ventilation records; medical staffing and protocols; and medication procedures. *See* (ECF No. 9, at 14).

Plaintiffs' allegations regarding violation of the Fifth Amendment and Administrative Procedure Act (the "APA") (ECF No. 1 at ¶¶ 176-191) through coercion of involuntary signatures and waivers of rights is particularly problematic for the "core contention" framework. If coercion is determined by an objective standard, it would require this Court to apply its objective framework to the unique communications of every individual with the environment at Miramar to determine whether the totality of the circumstances was sufficient to be coercive. If coercion is judged by a subjective standard, it would require the Court to inquire as to every individual's state of mind. Application of either standard to every past of future individual processed through Miramar is

obviously impossible.

The declaration of Assistant Field Officer Director Angel Cata (the "Cata Declaration") discusses various ways in which Miramar's policies allow and facilitate individuals' access to counsel. *See* **Exhibit A**, Cata Declaration, at ¶¶ 15-20. Whether such policies constitute a violation of an individual's right to access counsel will depend entirely upon individualized facts regarding the timing, circumstances and desired level of interaction between an individual and their legal counsel. The practices described by Cata may fully satisfy the needs or desires of individuals and their legal counsel.

Plaintiffs' allegations of violation of the APA for "agency action unlawfully withheld" (ECF No. 1 at ¶¶ 176-191) are at least rooted in an administrable inquiry, is the agency complying with its own policies under Directive 11087.2. Even here, however, the inquiry veers from bright line rules into the realm of standards. This Court should not want to wade into difficult operational questions such as: a) what makes a holding room safe; b) what is adequate screening to identify serious mental health conditions; what procedures ensure adequate access to prescription medications; and what measures or increasing privacy are feasible without impairing the safety of individuals being processed?

Plaintiffs argue that all the questions can be resolved through evidence common to the Class without requiring separate adjudication of every Class member's experience. That is not the case.

Rule 23(a)(2)'s commonality requirement "is easy to misread." *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019), citing *Dukes*, 564 U.S. at 349. It is not sufficient for Plaintiffs to allege that there are questions of law or fact common to the class because they all claim they are being harmed because of Defendants' failure to comply with the

Directive, or Defendants' shared knowledge of the serious risks and their response. Where they allege that Defendants failed to perform identified, discrete, legally required acts when the applicable triggering circumstances or deadlines rose. Instead, "Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'" *Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012), citing *Dukes*, 564 U.S. at 350 (emphasis and brackets in original).

Miramar additionally varies in the influx of individuals who go through the facility which cannot be predetermined. With the recent decrease in detainee population in Miramar, the facility administrator has the flexibility to place detainees in hold rooms which allow for more distancing , as well as more spacing for sleeping and cohabiting for the duration of processing. Whether a particular detainee's arrangement meets Directive guidelines, will depend upon an individualized determination. However, once in the hold room, it is an autonomous decision of the detainee of where or how to sleep or lay their mat. This is not a resolution of a claim central to each class member's claim "in one stroke."

Plainly, each named Plaintiff, as well as the putative class members, have individual characteristics that would have to be considered in determining whether a violation of law has occurred. Presumably, Plaintiffs would not disagree that a detainee with health issue would have to be dealt with differently than a detainee with no health issues.

The Supreme Court recognized in *Jennings v. Rodriguez,* 138 S. Ct. 830, 852 (2018), that a class action may not be the proper vehicle to resolve Due Process claims because of the flexibility inherent in a Due Process analysis. *Id.* (remanding to the Court of Appeals to consider this question). Because due process is a flexible concept, these dissimilarities would require this Court

to delve into the specific facts of each detainee and Miramar's case; thereby, rendering it impossible to dispose of the class wide claims in an efficient manner. *Id*. Accordingly, Plaintiffs' proposed class does not meet the commonality requirement under Rule 23(a)(2).

## VII. PLAINTIFFS DO NOT SATISFY THE TYPICALITY REQUIREMENT.

The Plaintiffs fail to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement of Rule 23(a)(3) "derives its independent legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3rd Cir. 2012). Thus, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class member." *Falcon*, 457 U.S. at 156. The proposed class lacks typicality because an individualized analysis of the Plaintiffs claims is required—the claims may vary depending on what the criminal background was, health concerns of the class member, and sex at issue and also differ from other future putative class members because the conditions of confinement may vary over time throughout the year.

Moreover, AFOD Cata's Declaration makes clear that the background of the individual being processed as well as external conditions may have an impact on the experience of an individual being processed at Miramar, including how long they stay at the facility. *See* Cata Declaration at P. 25-26. The need to manage "security requirements; weather and transportation disruptions; medical placement needs; operational influxes; and, identity and legal verification hurdles" demonstrates that imposing a set of rigid policies preferred by one individual passing through Miramar may increase the risk to or affirmatively harm the interests of other individuals

with a different demographic, health or experiential profile. This conflict of interests is precisely when typicality is an essential element of class certification.

While the inherently transitory doctrine may prevent mootness, it does not create typicality where the named plaintiffs no longer face the challenged conditions. Named Plaintiffs are not currently subject to the conditions they challenge and therefore do not have claims typical of a class of current or future detainees. Their past experiences do not establish that they share the same interest in prospective relief as persons who remain (or may in the future be) detained at Miramar.

## VIII. THE NAMED PLAINTIFFS ARE NOT ADEQUATE CLASS REPRESENTATIVES.

The proposed class cannot satisfy the adequacy requirement of Rule 23(a)(4). An adequate representative is one who will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee*, 311 U.S. 32, 43 (1940). The adequacy "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The named Plaintiffs are not adequate class members for the same reason the proposed class lacks typicality—the claims may vary depending on the person who is being processed and also differ from other future putative class members because the conditions of confinement vary over time due to the varying number of detainees.

Class representatives must "possess the same interest and suffer the same injury" as the class members, otherwise, they are "simply not eligible to represent a class of persons who did allegedly suffer injury." *E. Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403-04, 97 S. Ct. 1891, 1896-97 (1977) (internal quotation marks and citation omitted).

There is nothing in the record to indicate that Plaintiff Salmeron is playing any role in

litigation other than as a figurehead. Federal courts have traditionally given proposed class counsel wide latitude with respect to the involvement of a named Plaintiff in the litigation. Such latitude, however, is not unlimited. Courts have found an absence of adequacy where the named Plaintiff plays no meaningful role in the litigation. A recent example of just such an occurrence was in *D.N.N. v. Baker*, 1:25-CV-01613 (D. Md.), involving a temporary holding facility akin to Miramar. 2025 WL 2098633.

Citing 4th Circuit doctrine, the court stated "While "the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative," *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003), where a named Plaintiff "lacks any understanding of the class representative's role in litigation, adequacy may not be satisfied." *Monroe v. City of Charlottesville, Virginia*, 579 F.3d 380, 385 (4th Cir. 2009) (emphasis in original). "Findings that a representative lacks sufficient interest, credibility, or either knowledge or an understanding of the case—although a knowledge or understanding of all the intricacies of the litigation is not required—are grounds for denying class certification." *Id*. Ultimately, the court must ensure (and be persuaded) that the named Plaintiffs "are not simply lending their names to a suit controlled entirely by the class attorney." *Id*. (citation omitted).

There is no evidence that Plaintiff Salmeron is playing any role in this litigation other than lending his name to a suit controlled entirely by Americans for Immigrant Justice and the Southern Poverty Law Center. In Plaintiffs' motion for class certification there are declarations from a representative of both organizations, but none from Salmeron. Nor is there a declaration from Salmeron in Plaintiffs' motion for a preliminary injunction despite there being a plethora of declarations from non-parties.

Further, Anonymous Plaintiff John Doe has apparently not committed to continued

participation in the litigation after this Court's order preventing him from proceeding under pseudonyms. During the status conference on November 17, 2026, counsel for Plaintiffs appeared to indicate that John Doe has not committed to continuing as part of the litigation now that the Court has denied Plaintiffs' motion for him to proceed under pseudonym.

Thus, the named Plaintiffs cannot adequately represent the interests of all the putative current and future class members.

## IX. PLAINTIFFS FAIL TO MEET THE REQUIREMENT OF FED. R. CIV. P. 23(B)(2)

Plaintiffs seek certification of their proposed class under Fed.R.Civ.P. 23(b)(2), which provides that a class action can be maintained if, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole …"

"The touchstone of a 23(b)(2) class is that the class claims must be cohesive." *Harris v. Union Pacific R.R. Co.*, 953 F.3d 1030, 1033 (8th Cir. 2020). Rule 23(b)(2) applies only when a single injunction or declaratory judgment provides relief to each member of the class. *Dukes*, 564 U.S. at 360. More importantly, a "Rule 23(b)(2) class action is appropriate only 'when a single injunction or declaratory judgment would provide relief to each member of the class,' not 'when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.*

In this case, Plaintiffs assert claims under the Directive that their rights have been violated arising from facility-wide policies and practices challenged by the Class. *See* (ECF No. 9, at 16). Plaintiffs' attempt to use the 12-hour rule as class wide "glue" fails because duration relative to the directive is irrelevant to the actual allegations. It makes a difference if a putative class member has a criminal background, a medical necessity, or a qualifying difference that would affect their

processing through Miramar. In *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169 (3rd Cir. 2009), a nationwide class of plaintiffs, employees of United Parcel Service, were alleging unlawful discrimination by UPS under the Americans with Disabilities Act (ADA). The district court certified a nationwide class. On appeal, the Third Circuit reversed the district court, noting that, "establishing the unlawful discrimination alleged by plaintiffs would require determining whether class members are 'qualified' under the ADA, an assessment that encompasses inquiries acknowledged by the District Court to be too individualized and divergent with respect to this class to warrant certification under Rule 23(a) and (b)(2)." *Id*. at 186..

The resolution of Plaintiffs' claims would also require individualized and divergent inquires since Miramar is at issue, it may have a present physical layout, with a set detainee capacity, but varying detainee population in numbers and background. Moreover, each putative class member's own set of circumstances would have to be reviewed by the district court, such as criminal background, and medical necessity, as well as amenability to release under the Immigration and Nationality Act. In *Lakeland Regional Medical Ctr. Inc. v. Astellas US, LLC*, 763 F.3d 1280 (11th Cir. 2014), the Eleventh Circuit affirmed the district court's refusal to certify a class under Rule 23(b)(2). The appellate court observed that, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." *Id*. at 1291, citing *Dukes*, 564 U.S. at 360. Further, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id*.

In this case, a injunctive relief is not appropriate respecting the class as a whole because the named representatives are no longer detained at Miramar and would not benefit from an injunction. Plaintiffs allege four claims for relief. The Court would have to consider violation of the Fifth Amendment Due Process Clause; violation of the First and Fifth Amendments; violation

of Fifth Amendment Due Process Clause and the Administrative Procedure Act, 5 U.S.C. §§ 704(2)(A)-(B); and Violation of the Administrative Procedure Act, 5 U.S.C. § 706. This is not the "indivisible nature of the injunctive or declaratory remedy" which Rule 23(b)(2) requires.

Consequently, Plaintiffs fail to establish they have a viable class under Rule 23(b)(2).

## X. CONCLUSION

Defendants request the Court hold a limited evidentiary hearing to ascertain whether Orlando Rosales Salmeron is only a figure head rather than an adequate class representative.

Because they fail to demonstrate the requisite conditions exist for class standing under F.R.C.P. Rule 23, Plaintiffs' motion for class certification should be denied.

Respectfully submitted,

YARA LORENZO KLUKAS
ACTING UNITED STATES ATTORNEY

By: s/ *Keyla E. Rodriguez*
Keyla E. Rodriguez
ASSISTANT U.S. ATTORNEY
Florida Bar: 1044352
United States Attorney's Office
99 N.E. 4th Street, Suite 328
Miami, Florida 33132
Telephone: 305-798-3849
E-mail: Keyla.Rodriguez@usdoj.gov

By: s/ William E. Bestani
William E. Bestani
ASSISTANT U.S. ATTORNEY
Special Bar ID No.: A5503601
United States Attorney's Office
99 N.E. 4th Street, Suite 354
Miami, Florida 33132
Telephone: 305-961-9001
E-mail: William.Bestani@usdoj.gov

**Counsel for Defendants**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 20, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ Keyla E. Rodriguez
Keyla E. Rodriguez
Assistant U.S. Attorney